**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AVENTIS PHARMACEUTICALS INC. and
SANOFI-AVENTIS US LLC,

           Plaintiffs,

        v.

BARR LABORATORIES, INC.,

           Defendant.

    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )

**REDACTED PUBLIC VERSION**

C.A. No. 06-286-GMS

**PLAINTIFFS' ANSWERING BRIEF OPPOSING BARR'S
MOTION TO DISMISS OR BIFURCATE AND
STAY DISCOVERY ON WILLFUL INFRINGEMENT CLAIM**

ASHBY & GEDDES
Steven J. Balick (I.D.#2403)
John G. Day (I.D. #2114)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs*

*Of Counsel:*

Paul H. Berghoff
Joshua R. Rich
Jeremy E. Noe
McDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, Illinois  60606
(312) 913-0001

Dated:  June 28, 2006

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................. 1

II.  NATURE AND STAGE OF PROCEEDINGS ............................ 2

III. SUMMARY OF ARGUMENT .................................................. 3

IV.  FACTUAL BACKGROUND ..................................................... 4

V.   ARGUMENT ........................................................................ 5

   A.  This Court Should Not Dismiss Sanofi-Aventis' Willful Infringement
       Claims, Especially If Barr's Declaratory Judgment Counterclaims Remain ..... 6

       1.  Willfulness Contentions Are Not Automatically Precluded in an
           ANDA Case, Particularly Where More Than Just a § 271(e)(2)
           Act of Infringement May Be At Issue ........................................ 6

       2.  It Is Premature to Rule Out the Possibility That Discovery May
           Produce Evidence of Willful Infringement ................................. 8

   B.  This Court Should Not Bifurcate and Stay Discovery on Plaintiffs'
       Willful Infringement Claims ...................................................... 10

       1.  Defendants Would Not Be Severely Prejudiced By A *Quantum*
           Dilemma Because the Federal Circuit Now Holds That No
           Adverse Inference Flows From Failure to Produce an Opinion
           Of Counsel ......................................................................... 10

       2.  Bifurcation Would Be Judicially Inefficient And Would Prejudice
           Plaintiffs With The Need to Present Some Evidence Twice .............. 12

VI.  CONCLUSION ...................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Allergan, Inc. v. Alcon, Inc.,*
  CA No. 04-968 (GMS), 2005 WL 3971927 (D. Del. July 26, 2005) ...............3, 7, 9, 10

*Calmar, Inc. v. Emson Research, Inc.,*
  850 F.Supp 861 (C.D. Cal. 1994) ............................................................... 12

*Eisai Co., Ltd. v. Dr. Reddy's Labs. Ltd.,*
  C.A. 03-9053, Hearing Tr. (S.D.N.Y. Oct. 12, 2004) .........................................9

*Elvig v. Calvin Presbyterian Church,*
  375 F.3d 951 (9th Cir. 2004) ....................................................................3

*Fromson v. Western Litho Plate & Supply Co.,*
  853 F.2d 1568 (Fed. Cir. 1988) .................................................................11

*Glaxo Group Ltd. v. Apotex, Inc.,*
  376 F.3d 1339 (Fed. Cir. 2004) .............................................................3, 6, 7

*Johns Hopkins Univ. v. Cellpro,*
  160 F.R.D. 30 (D. Del. 1995) .................................................................. 12

*Kao Corp. v. Unilever United States, Inc.,*
  334 F. Supp. 2d 527 (D. Del. 2004) ........................................................... 13

*Kimberly-Clark Corp. v. James River Corp.,*
  131 F.R.D. 607 (N.D. Ga. 1989) .............................................................. 13

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
  383 F.3d 1337 (Fed. Cir. 2004) .............................................................4, 11

*Kos Pharm., Inc. v. Barr Labs., Inc.,*
  218 F.R.D. 387 (S.D.N.Y. 2003) ..............................................................12

*Lis v. Robert Packer Hosp.,*
  579 F.2d 819 (3d Cir. 1978) .............................................................10, 11

*Mellon v. Beecham Group PLC,*
  17 U.S.P.Q.2d 1149, Civ. No. 86-2179, 1991 WL 16494 (D.N.J. Jan. 3, 1990) ...........11

*Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.,*
  Civ. A. 05-CV-1887, 2005 WL 3664014 (D.N.J. Dec. 30, 2005) ...........................8

*Quantum Corp. v. Tandon Corp.,*
   940 F.2d 642 (Fed. Cir. 1991) ...................................................................11

*Real v. Bunn-O-Matic. Corp.,*
   195 F.R.D. 618, 626 (N.D. Ill. 2000) .....................................................12, 13

*Ruiz v. A.B. Chance Co.,*
   234 F.3d 654 (Fed. Cir. 2000) ...............................................................13

*Smith v. Alyeska Pipeline Serv. Co.,*
   538 F.Supp. 977 (D. Del. 1982) .........................................................3, 11

*SmithKline & French Labs., Ltd. v. Teva Pharms., USA, Inc.,*
   C.A. No. 05-197-GMS, Hearing Tr. (D. Del. July 28, 2005) ....................3, 8, 9, 10

*Trading Technologies, Int'l, Inc. v. Espeed, Inc.,*
   --- F.Supp.2d ----, C.A. No. 04 C 5312-JBM, 2006 WL 1037322
   (N.D. Ill. April 17, 2006) ..................................................................4, 12

*Turbe v. Government of the Virgin Islands,*
   938 F.2d 427 (3d Cir. 1991) ...................................................................3

*Willemijn Houdstermaatchaapij BV v. Apollo Computer Inc.,*
   707 F. Supp. 1429 (D. Del. 1989) .......................................................4, 13, 14

## STATUTES AND REGULATIONS

21 U.S.C. § 355(j)(2)(A) ........................................................................6

21 U.S.C. § 355(j)(2)(A)(vii)(IV) ...............................................................4

21 U.S.C. § 355(j)(2)(B)(iv)(II) ................................................................5

35 U.S.C. § 271(e)(2) ...................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .........................................................................3

Fed. R. Civ. P. 12(c) ............................................................................3

Fed. R. Civ. P. 12(h)(2) .........................................................................3

Fed. R. Civ. P. 42(b) ......................................................................1, 3, 12

## I.    INTRODUCTION

If this action was premised only on Barr's ANDA submission that seeks to market a generic triamcinolone acetonide nasal spray, Barr might have a colorable argument that Sanofi-Aventis could not sustain a willful infringement claim.  However, Barr has sought to make the scope of this case far broader by including declaratory judgment counterclaims that cover actions well beyond the submission of its ANDA.  Furthermore, this case is at a posture -- prior to the beginning of discovery -- at which this Court has established that a willfulness claim should be preserved to allow the plaintiff to seek information that would show willfulness based on more than merely the act of submitting an ANDA and Paragraph IV certification.  Under these circumstances, none of the cases that Barr cites suggests that a willfulness claim should be stricken, and this Court's own decisions suggest that it should remain for discovery.

No precedent holds that a claim of willful infringement is never appropriate in an ANDA action.  Especially where, as here, the pleadings indicate that more than just § 271(e)(2) acts of infringement may be at issue, *Glaxo* does not automatically preclude a claim of willful infringement.  Numerous courts, including this Court, have permitted discovery seeking to support a theory of willful infringement based on a frivolous and wholly unjustified ANDA filing with Paragraph IV certification.  It would be premature for this Court to foreclose Sanofi-Aventis from attempting to elicit facts sufficient to support a willful infringement claim.  Accordingly, Sanofi-Aventis' willful infringement claim should not be dismissed.

Discovery relating to Sanofi-Aventis' willful infringement claim also should not be bifurcated and stayed. Bifurcation under Rule 42(b) is the exception, not the rule, and Barr has not satisfied its burden of establishing that bifurcation will promote judicial economy and will not unduly prejudice either party. Barr does not face a so-called "*Quantum* dilemma" absent bifurcation because the Federal Circuit has disposed of any adverse inference flowing from a party's election not to produce an exculpatory opinion of counsel. Because there is close overlap here between evidence of liability and willfulness, bifurcation would prejudice Sanofi-Aventis with the time and expense of presenting the same evidence twice. Accordingly, this Court should deny Barr's motion in the alternative to order bifurcation and stay discovery on willful infringement claims.

## II.    NATURE AND STAGE OF PROCEEDINGS

On May 2, 2006, Plaintiffs Aventis Pharmaceuticals Inc. and Sanofi-Aventis US LLC (collectively "Sanofi-Aventis") brought this action against Defendant Barr Laboratories, Inc. ("Barr") for infringement of U.S. Patent Nos. 5,976,573 (D.I. 1, Ex.1 ) and 6,143,329 (D.I. 1, Ex. 2) ("patents-in-suit"). Barr infringed the patents-in-suit by submitting an ANDA with Paragraph IV certification that seeks FDA approval to market a triamcinolone acetonide aqueous nasal spray before expiration of the patents-in-suit. (D.I. 1, Compl. ¶ 14).

Barr filed an Answer and Counterclaims on May 22, 2006. (D.I. 6, Answer, at p.1). Barr's counterclaims included allegations that the actual manufacture, use, or sale of Barr's ANDA products would not infringe claims of the patents-in-suit. (D.I. 6, Answer ¶¶ 33, 43). Nine days later, on May 31, 2006, Barr filed a post-Answer motion to dismiss or in the alternative bifurcate and stay discovery on Plaintiffs' willful

infringement claim.[1]  (D.I. 9).   On June 9, 2006, Plaintiffs filed their Reply to Counterclaims.  (D.I. 11).

## III.   SUMMARY OF ARGUMENT

1.   The circumstances at issue in *Glaxo* and *Allergan* were limited to the mere submission of an ANDA. *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339 (Fed. Cir. 2004); *Allergan, Inc. v. Alcon, Inc.*, C.A. No. 04-968 (GMS), 2005 WL 3971927 (D. Del. July 26, 2005) (Ex. 1).   Barr's counterclaims expand this case beyond the mere submission of an ANDA.  To the extent this Court does not limit that additional scope, Sanofi-Aventis' willful infringement claim is proper and should not be dismissed.

2.   Even where only § 271(e)(2) acts of infringement are at issue, however, discovery concerning a willful infringement claim is appropriate in cases involving an ANDA filing with Paragraph IV certification.   In fact, this Court has permitted such discovery even <u>after</u> *Glaxo* and *Allergan. See SmithKline & French Labs., Ltd. v. Teva Pharma., USA, Inc.*, C.A. No. 05-197 (GMS), Hearing Tr. at 5, 8-9 (D. Del. July 28, 2005) (Ex. 2).   Accordingly, Plaintiffs' willful infringement claims should not be dismissed at this early stage of litigation.

3.   In seeking bifurcation under Rule 42(b), Barr bears the heavy burden of establishing that bifurcation will promote judicial economy and will not unduly prejudice either party. *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 982 (D. Del. 1982). Barr does not face a so-called *"Quantum* dilemma" absent bifurcation because the

---

[1] Although Barr styled its motion as a Rule 12(b)(6) motion to dismiss, such a motion must be filed before any responsive pleading. *Turbe v. Government of the Virgin Islands*, 938 F.2d 427 (3d Cir. 1991); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951 (9th Cir. 2004).  And, because the pleadings were not closed at the time Barr filed its motion, the motion should not be considered as a motion for judgment on the pleadings under Rule 12(c).  Accordingly, it appears that Barr's motion should be treated as a Rule 12(h)(2) motion for failure to state a claim, in which event Barr's motion is premature, and not appropriate for resolution until the summary judgment stage.

Federal Circuit has disposed of any adverse inference flowing from a party's election not to produce an exculpatory opinion of counsel. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (*en banc*); *Trading Technologies, Int'l, Inc. v. Espeed, Inc.*, --- F. Supp. 2d ----, C.A. No. 04 C 5312, 2006 WL 1037322 (N.D. Ill. April 17, 2006) (Ex. 3). Because there is close overlap here between evidence of liability and willfulness, bifurcation would prejudice Sanofi-Aventis with the time and expense of presenting the same evidence twice. *Willemijn Houdstermaatchaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1434-35 (D. Del. 1989). Accordingly, this Court should deny Barr's motion in the alternative to order bifurcation and stay discovery on willful infringement claims.

## IV.    FACTUAL BACKGROUND

The claims of the patents-in-suit relate to aqueous nasal drug formulations that are useful in treating seasonal and allergic rhinitis ("patented formulations"). (D.I. 1, Ex. 1 at col. 1, l. 5-18; D.I. 1, Ex. 2 at col. 1, l. 13-26). The patented formulations contain the active ingredient triamcinolone acetonide ("TAA") (an anti-inflammatory steroid) and are administered to nasal mucosa via a non-aerosol metered-dose pump spray. (D.I. 1, Ex. 1 at col. 12, l. 59-col.16, l. 24; D.I. 1, Ex. 2 at col. 13, l. 2-col.16, l. 24). The patented formulations are sold under the trademark NASACORT AQ® pursuant to NDA 20-468. (D.I. 1, ¶ 10).

By letter dated March 20, 2006 ("certification letter"), Barr informed Sanofi-Aventis that Barr had submitted ANDA 78-104 seeking FDA approval to market a generic TAA aqueous nasal spray prior to expiration of the patents-in-suit. (Ex. 4). Barr's certification letter contained a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV)

("Paragraph IV certification") stating that in Barr's opinion the patents-in-suit were invalid, unenforceable or would not be infringed by Barr's proposed generic product. (*Id.* at p. 2 ¶ VI).

Barr's Paragraph IV certification mainly asserted

**REDACTED**

# V.    ARGUMENT

### A.    This Court Should Not Dismiss Sanofi-Aventis' Willful Infringement Claims, Especially if Barr's Declaratory Judgment Counterclaims Remain

#### 1.    Willfulness Contentions Are Not Automatically Precluded in an ANDA Case, Particularly Where More Than Just a § 271(e)(2) Act of Infringement May Be At Issue

Barr is simply incorrect in asserting that "controlling Federal Circuit precedent" dictates dismissal of Sanofi-Aventis' willful infringement claim. (D.I. 10 ("Def. Br.") at p.1). Barr's arguments are based on the Federal Circuit's decision in *Glaxo* that merely filing an ANDA in good faith does not constitute willful infringement. (Def. Br. at 5-6). However, circumstances here are very different from those in *Glaxo*. Especially where, as here, the pleadings provide every indication that acts of infringement beyond §271(e)(2) may be at issue, *Glaxo* does not automatically preclude a claim of willful infringement.

In *Glaxo*, Apotex filed an ANDA seeking to market a generic version of the antibiotic drug product cefuroxime. *Glaxo*, 376 F.3d at 1343. Apotex's ANDA filing was "atypical" because cefuroxime was approved by the FDA under a provision of the Federal Food, Drug, and Cosmetic Act relating to antibiotics that did not require an ANDA applicant to submit one of the four types of certification under 21 U.S.C. § 355(j)(2)(A) that are usually required of manufacturers seeking to bring a generic drug to market. *Id.* at 1344. Accordingly, Apotex was not required to make and did not make a Paragraph IV certification that the patent at issue was invalid or was not infringed. *Id.*

The district court found that Apotex's ANDA submission infringed Glaxo's patent for cefuroxime and that such infringement was willful. *Id.* at 1345. The only

conduct supporting the district court's willfulness finding was Apotex's ANDA submission. The Federal Circuit agreed with Apotex that "*the mere filing of an ANDA cannot constitute grounds for a willful infringement determination . . . .*" *Id.* at 1349 (emphasis added). In so holding, the Federal Circuit noted that "Apotex did not file a paragraph IV certification of any kind, let alone one that made baseless accusations of invalidity," and that Apotex had not engaged in any litigation misconduct. *Id.* at 1351. *Glaxo* therefore does not preclude a determination of willfulness in this case, where acts of infringement appear to go beyond the mere submission of an ANDA, and paragraph IV certifications of invalidity may be baseless.

After *Glaxo*, this Court addressed a similar issue in *Allergan, Inc. v. Alcon, Inc.*, C.A. No. 04-968 (GMS), 2005 WL 3971927 (D. Del. July 26, 2005). (Ex. 1). In *Allergan*, Alcon submitted an ANDA with Paragraph IV certification seeking to market a generic version of the ophthalmic drug product brimonidine tartrate. *Id.* at *1. Allergan brought suit for infringement under § 271(e)(2), and further alleged that Alcon's infringement was willful because Alcon acted without a reasonable basis for believing that it would not be liable for infringement of the patents-in-suit. *Id.* By the time the case had proceeded to the summary judgment motion stage, Allergan had not produced sufficient facts beyond the mere submission of the ANDA and Paragraph IV certification that would support a claim for willful infringement. *Id.* at *2. Accordingly, this Court dismissed Allergan's willful infringement claim. *Id.* *Allergan* does not preclude a determination of willfulness in this case because the acts of infringement at issue in *Allergan* did not, as here, go beyond a mere ANDA submission.

At bottom, neither the Federal Circuit nor this Court has held that a claim of willful infringement is never appropriate in an ANDA case.  Indeed, in *SmithKline & French Labs., Ltd. v. Teva Pharm., USA, Inc.*, C.A. No. 05-197 (GMS), Hearing Tr. (D. Del. July 28, 2005) (Ex. 2) this Court has acknowledged that *Glaxo* does not hold that there can never be willful infringement in an ANDA filing situation:

> Plaintiff's Counsel:   . . . The *Apotex* [sic: *Glaxo*] case does not hold there cannot be willful infringement from an ANDA filing.
>
> The COURT:   I agree.

(*Id.* at 5).

Here, Barr's counterclaims seek declarations of non-infringement based on actual manufacture, use, or sale of the products described in its ANDA (D.I. 6, ¶¶ 31, 41).  Thus, Barr's Answer may seek to bring into play more than just § 271(e)(2) infringement.  Because Barr's Answer provides every indication that more than just § 271(e)(2) infringement may be involved here, Plaintiffs' willful infringement claim is especially appropriate.

### 2.  It Is Premature to Rule Out the Possibility That Discovery May Produce Evidence of Willful Infringement

Even where only § 271(e)(2) acts of infringement are at issue, however, discovery to support a willful infringement claim is appropriate.  Indeed, this Court and others have permitted discovery in such circumstances to pursue a theory of willfulness premised on a frivolous and wholly unjustified ANDA filing with Paragraph IV certification. *See SmithKline & French*, Hearing Tr. at 8-9 (C.A. No. 05-197 (GMS)) (Ex. 2); *see also Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.*, Civ. A. 05-CV-1887, 2005 WL 3664014, at *2 (D.N.J. Dec. 30, 2005) (unpublished) (Ex. 7) (denying motion to strike

willfulness contention to provide patentee opportunity to show that additional activity beyond mere ANDA filing could support claim of willful infringement); *Eisai Co., Ltd. v. Dr. Reddy's Labs. Ltd.*, C.A. 03-9053, Hearing Tr. at 31-35 (S.D.N.Y. Oct. 12, 2004) (Ex. 8) (denying motion to strike willfulness contention and allowing discovery to determine if paragraph IV certification was subjectively baseless and unjustified).

In *SmithKline*, this Court held that it would be premature at the early pleadings stage of litigation to dismiss a claim of willful infringement premised on a baseless and wholly unjustified ANDA filing with paragraph IV certification:

> Defendant's Counsel: . . . We would say that there is no basis for willful infringement based on simply filing an ANDA. . . .
>
> The COURT: Wouldn't it be premature for the Court, though, at this point to rule out the possibility that discovery might adduce evidence that might support in some way a willfulness contention?
>
>       * * *
>
> Plaintiff's Counsel: I do believe it is premature, because, as I mentioned before, the filing of the ANDA, the *Apotex* [sic: *Glaxo*] case does not hold that that can't be the basis for willful infringement. Here the circumstances are very different. We have a Paragraph IV. The notice letter gives a very, very flimsy rationale for the basis for that. I think that alone can establish a prima facie case of willfulness.
>
>       We would then need to discover facts to further bolster that claim. But I think there is enough here to go forward. . . .
>
> The COURT: Okay. I am going to side with the plaintiff on this one at this stage, and suggest that this probably will, this issue may well be appropriate for summary consideration. . . .

(Ex. 2, at 6-8).

This Court's *SmithKline* ruling permitting discovery to pursue a willful infringement claim based on a theory that the ANDA filing was subjectively baseless came <u>after</u> its ruling in *Allergan* striking the willful infringement claim based on a similar

9

theory.  The important distinction between the two cases is the then-current posture of litigation.  In *Allergan*, by the time summary judgment motions were filed, the plaintiff had not produced sufficient facts in support of its willfulness contention.  In *SmithKline*, the litigation was at a much earlier stage and the plaintiff had not yet had an opportunity to seek facts to support its willful infringement theories.

Here, the situation is exactly analogous to that of *SmithKline*.  Because discovery has not yet opened, Sanofi-Aventis has not had an opportunity even to review Barr's ANDA submission, let alone seek to obtain facts to support its contention that Barr had no reasonable basis for its infringing actions.

**REDACTED**

**B.     This Court Should Not Bifurcate and Stay Discovery On Plaintiffs' Willful Infringement Claims**

    **1.     Defendants Would Not Be Severely Prejudiced By a *Quantum* Dilemma Because The Federal Circuit Now Holds That No Adverse Inference Flows From Failure to Produce an Opinion of Counsel**

Bifurcation is "not to be routinely ordered." *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978).  Bifurcation motions are granted "on a case-by-case basis" and only when the party seeking bifurcation can satisfy the burden of establishing that

"separation will result in judicial economy and will not unduly prejudice any party." *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 982 (D. Del. 1982); *see also Lis*, 579 F.2d at 824. This presents a heavy burden for a party seeking bifurcation, as a "piecemeal trial on separate issues involved in one suit is not necessarily in the interest of swift, economical and nonprejudicial justice." *Mellon v. Beecham Group PLC*, 1991 WL 16494, 17 U.S.P.Q.2d (BNA) 1149, 1154 (D.N.J. 1989) (Ex. 9). Barr has not met and cannot meet that heavy burden in this case.

Barr argues incorrectly that it faces a so-called "*Quantum* dilemma" absent bifurcation. (Def. Br. at 8). In *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991), the Federal Circuit discussed what used to be a Hobson's choice between the risk of "prejudicing [oneself] on the question of liability" by disclosing an opinion of counsel, and the risk of "being found to be a willful infringer" by not disclosing the opinion. *Quantum*, 940 F.2d at 644. At the time *Quantum* was decided, a withholding of an opinion of counsel led to an adverse inference that "either no opinion was obtained or, if an opinion were obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention." *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1572-73 (Fed. Cir. 1988), *overruled by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (*en banc*). However, the Federal Circuit disposed of the adverse inference in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (*en banc*).

In *Knorr-Bremse*, the Federal Circuit held that "no adverse inference that an opinion of counsel was or would have been unfavorable flows from an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel." 383 F.3d at 1341.

Elimination of the adverse inference in *Knorr-Bremse* alleviates the so-called *Quantum* dilemma. Thus, although a defendant still may face a difficult tactical decision in terms of whether to waive its attorney-client privilege in defending against a willful infringement claim, absent the adverse inference a defendant is only slightly prejudiced, and bifurcation is not appropriate on that basis. *Trading Technologies, Int'l. Inc. v. Espeed, Inc.*, --- F.Supp.2d ----, C.A. No. 04 C 5312, 2006 WL 1037322, at *4 (N.D. Ill. April 17, 2006). (Ex. 3).

>    **2.    Bifurcation Would Be Judicially Inefficient and Would Prejudice Plaintiffs With The Need to Present Some Evidence Twice**

Courts often deny bifurcation of willfulness claims, especially where they are not coupled with damages claims. *Kos Pharm., Inc. v. Barr Labs., Inc.*, 218 F.R.D. 387, 390-91 (S.D.N.Y. 2003). "[T]rial practicalities and the weight of authority tilt the application of Rule 42(b) against separation of willfulness from liability absent a basis for bifurcation justified by damages claims." *Id.* at 392; *see also Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp 861 (C.D. Cal. 1994). Efficiency considerations in a case without complex damages issues clearly favor one trial. *Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30 (D. Del. 1995).

There is certainly no basis for Barr's assertion that "bifurcation is appropriate because there will be little overlap between the liability and willfulness issues." (Def. Br. at 10). Bifurcation would be particularly inefficient in this case because of the significant overlap between the issues of validity and willfulness. *See, e.g., Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 626 (N.D. Ill. 2000) ("[W]illfulness cannot be easily partitioned into a separate issue to be decided in a vacuum."). Bifurcation promotes judicial

economy only if the second trial never takes place. The insubstantial nature of Barr's invalidity assertions is strong evidence that those assertions have not been made in good faith and that Barr's infringement is willful. There is a close overlap in proofs for showing patent validity and the ultimate willfulness conclusion that Barr's invalidity arguments lack any substantial support and were not advanced in good faith. *Kimberly-Clark Corp. v. James River Corp.*, 131 F.R.D. 607, 609 (N.D. Ga. 1989) ("[T]he defendant's state of mind when it infringed the patent [is] a finding of fact inextricably bound to the facts underlying the alleged infringement."). If a second trial turns out to be required, bifurcation introduces "considerable delay," *Real*, 195 F.R.D. at 620, and requires the presentation of much of the same evidence twice. *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1434-35 (D. Del. 1989).

If willfulness were bifurcated from liability, Sanofi-Aventis would be prejudiced by the inefficiency of the time and expense of presenting much of the same evidence twice.

**REDACTED**

Plaintiffs should not be required to present this same evidence twice in two different

trials. *See Willemijn*, 707 F. Supp. at 1434 (rejecting bifurcation where "it is obvious that separate trials in the present case would require plaintiff to present at least a limited amount of evidence twice . . . .").

In sum, this Court should deny Barr's request for bifurcation and a discovery stay on willful infringement claims, because lack of bifurcation does not severely prejudice Barr, and bifurcation would prejudice Sanofi-Aventis and present judicial inefficiency.

## VI.    CONCLUSION

Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss or in the alternative bifurcate and stay discovery on willful infringement claims, to avoid prejudicing Plaintiffs and to avoid judicial inefficiency.

ASHBY & GEDDES

*/s/ John G. Day*

Steven J. Balick (I.D.#2403)
John G. Day (I.D. #2114)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs*

*Of Counsel:*

Paul H. Berghoff
Joshua R. Rich
Jeremy E. Noe
Paul S. Tully, PhD
McDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, Illinois 60606
(312) 913-0001

Dated: June 21, 2006

170649.1

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2006, the attached **REDACTED PUBLIC VERSION OF PLAINTIFFS' ANSWERING BRIEF OPPOSING BARR'S MOTION TO DISMISS OR BIFURCATE AND STAY DISCOVERY ON WILLFUL INFRINGEMENT CLAIM** was served upon the below-named counsel of record at the address and in the manner indicated:

Josy W. Ingersoll, Esquire                           HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

George C. Lombardi, Esquire                        VIA FEDERAL EXPRESS
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601-9703


/s/ *John G. Day*
_____
John G. Day

169789.1

# EXHIBIT 1

Westlaw.

Slip Copy                                                                                          Page 1
Slip Copy, 2005 WL 3971927 (D.Del.)
(Cite as: Slip Copy)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
ALLERGAN, INC., and Allergan Sales, LLC,
Plaintiffs,
v.
ALCON INC., Alcon Laboratories, Inc., and Alcon
Research, Ltd., Defendants.
Civil Action No. 04-968 (GMS).

July 26, 2005.

William J. Marsden, Jr., Sean Paul Hayes, Fish &
Richardson, P.C., Wilmington, DE, for Plaintiffs.
Josy W. Ingersoll, Karen Elizabeth Keller, Young,
Conaway, Stargatt & Taylor, Wilmington, DE, for
Defendants.

**ORDER**
GREGORY M. SLEET, District Judge.
*1 1. Allergan, Inc. and Allergan Sales, LLC
(collectively, "Allergan") filed the above-captioned
action against Alcon Inc., Alcon Laboratories, Inc.,
and Alcon Research, Ltd. (collectively, "Alcon") on
August 24, 2004. Allergan filed this suit for patent
infringement pursuant to 35 U.S.C. § 271(e)(2). FN1
The complaint alleges that Alcon infringes U.S.
Patent No. 6,673,337 (the " 337 patent") and U.S.
Patent No. 6,641,834 (the " 834 patent") because it
submitted a § 505(b)(2) application, or paper New
Drug Application ("paper NDA"), to the Food and
Drug Administration ("FDA"), seeking approval of
its proposed generic brimonidine tartrate ophthalmic
drug product. FN2 (Compl.¶ ¶ 14-15, 17.) The
complaint further alleges that Alcon acted without a
reasonable basis for believing that it would not be
liable for infringement of the 337 and 834 patents
and, as such, its infringement of the 337 and 834
patents is willful. (Id. ¶ ¶ 19, 23.) Allergan requests
injunctive relief and attorney's fees, pursuant to 35
U.S.C. § 285.FN3 The issue presently before the court
is whether Allergan may assert a claim for willful
infringement.

FN1. Section 271(e)(2) states, in pertinent
part:
[i]t shall be an act of infringement to submit-
an application under section 505(j) of the

Federal Food, Drug, and Cosmetic Act or
described in section 505(b)(2) of such Act
for a drug claimed in a patent or the use of
which is claimed in a patent if the purpose
of such submission is to obtain approval
under such Act to engage in the commercial
manufacture, use, or sale of a drug or
veterinary biological product claimed in a
patent or the use of which is claimed in a
patent before the expiration of such patent.
35 U.S.C. § 271(e)(2)(A).

FN2. Alcon also filed a certification with the
FDA under 21 C.F.R. §
314.50(i)(1)(i)(A)(4), or Paragraph IV
Certification, alleging that the 337 and 834
patents are invalid and/or not infringed by
its product.

FN3. Section 285 provides: "[t]he court in
exceptional cases may award reasonable
attorney fees to the prevailing party." The
Federal Circuit has recognized willful
infringement as a type of misconduct that
creates an exceptional case. See Hofmann-
La Roche Inc. v. Invamed Inc., 213 F.3d
1359, 1365 (Fed.Cir.2000) (citing Beckman
Instruments, Inc. v. LKB Produkter AB, 894
F.2d 1547, 1151 (Fed.Cir.1989)).

2. Allergan contends that a willfulness claim is
proper based on the totality of the circumstances.
Allergan further contends that the totality of the
circumstances comprises many factors, including
whether Alcon intentionally copied ALPHAGAN®
P, whether Alcon exercised due care to avoid
infringing Allergan's patents, whether Alcon relied on
competent legal advice, and Alcon's behavior as a
party to the litigation. (D.I. 64, at 2.) According to
Allergan, its claim of willfulness is based the
following: (1) Alcon's Paragraph IV certification was
filed without reasonable basis; and (2) Alcon's
conduct in the litigation demonstrates its lack of
reasonable basis. (Id. at 3). Lastly, Allergan contends
that the Federal Circuit's holding in Glaxo Group Ltd.
v. Apotex, Inc., 376 F.3d 1339 (Fed.Cir.2004) does
not foreclose a claim for willful infringement in
Abbreviated New Drug Application ("ANDA") or
paper NDA cases. (Id.)

3. Alcon asserts that the only act of infringement

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 3971927 (D.Del.)
(Cite as: Slip Copy)

alleged in the complaint is the filing of its paper NDA with the FDA. According to Alcon, in light of the Federal Circuit's holding in *Glaxo*, "Allergan's conclusory allegation-standing alone-cannot support a charge of willful infringement." (D.I. 75, at 2.)

The Federal Circuit first addressed the issue of willfulness in ANDA and paper NDA cases in *Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc., 231 F.3d 1339 (Fed. Cir.2000)*. In *Yamanouchi*, the court found that "[a]n ANDA [or paper NDA] filing by its very nature is a 'highly artificial act of infringement,' therefore, the trial court need not have elevated the ANDA certification into a finding of willful infringement." *231 F.3d at 1347*. Nonetheless, the court held that the case was exceptional and awarded attorney fees to the plaintiff, based on the defendant's "misconduct in filing a wholly unjustified ANDA certification and misconduct during the litigation that followed...." *Id.*

**\*2** The Federal Circuit addressed the issue again in *Glaxo Group Ltd. v. Apotex, Inc., 376 F.3d 1339 (Fed.Cir.2004)*, holding that "the mere fact that a company has filed an ANDA application or certification cannot support a finding of willful infringement for purposes of awarding attorney's fees pursuant to *35 U.S.C. § 271(e)(4)*." *376 F.3d at 1350-51*. In the *Glaxo* opinion, the court explained that in *Yamanouchi* it "determined that a baseless and 'wholly unjustified' paragraph IV certification in an ANDA filing, when combined with litigation misconduct, warranted an exceptional case finding." *Id. at 1350*. According to the court, "in *Yamanouchi* we did not agree that the generic company had engaged in willful infringement, but rather determined that an award of attorney's fees was permitted because the generic had filed numerous baseless filings supporting its fruitless and meritless arguments, both in its case at trial and in its ANDA certification." *Id.*

6. In the present case, Allergan has not pointed to anything which would support a finding of willful infringement. The only act of infringement alleged in Allergan's complaint is Alcon's allegedly baseless paper NDA filing and Paragraph IV Certification with the FDA. Because a paper NDA filing cannot be considered willful, Allergan's complaint does not state any basis under which it could assert a claim for willful infringement. Allergan, however, maintains that Alcon's change in position with respect to its written description defense set forth in its summary judgment motion, combined with the paper NDA filing, permits a claim for willful infringement. The

court disagrees. As the Federal Circuit explained in *Glaxo*, a finding that a ANDA/paper NDA case is "exceptional" can be based on meritless filings combined with litigation misconduct, but a finding of willful infringement cannot. Accordingly, the court will not permit a claim for willful infringement in this case. That being said, the court will not foreclose Allergan from, at the appropriate time, seeking to prove additional facts that would support its claim of an exceptional case for which the court should award attorney's fees. *See Aventis Pharma Deutschland GmbH v. Cobalt Pharms., Inc., 355 F.Supp.2d 586, 592-93 (D.Mass.2005)*.

Therefore, IT IS HEREBY ORDERED that:

1. A claim for willful infringement is not permitted in this case.

2. Allergan's claim for willful infringement shall be stricken from the complaint.

D.Del.,2005.
Allergan, Inc. v. Alcon, Inc.
Slip Copy, 2005 WL 3971927 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 809119 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Motion for Reargument or Reconsideration of its Motion for Leave to Amend its Answer (Feb. 15, 2006) Original Image of this Document (PDF)
• 2005 WL 2603655 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Brief in Support of Plaintiffs' Provisional Motion to Amend the Scheduling Order (Sep. 2, 2005) Original Image of this Document (PDF)
• 1:04cv00968 (Docket) (Aug. 24, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

1

```
 1                 IN THE UNITED STATES DISTRICT COURT
 2                  IN AND FOR THE DISTRICT OF DELAWARE
 3
 4   SMITH KLINE & FRENCH           : Civil Action
     LABORATORIES LIMITED and       :
     SMITHKLINE BEECHAM             :
     CORPORATION d/b/a GLAXOSMITHKLINE, :
 5                                  :
                                    :
 6       Plaintiffs,               :
                                    :
 7       v.                         :
                                    :
 8   TEVA PHARMACEUTICALS, USA, INC., :
                                    :
 9       Defendant.                 :
10                                  : No. 05-187-GMS
11              Wilmington, Delaware
                Thursday, July 28, 2005
12              9:00 a.m.
                In Chambers
13
14   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
15   APPEARANCES:
16        PATRICIA SMINK ROGOWSKI, ESQ.
            Connolly Bove Lodge & Hutz LLP
17               -and-
          AMY K. WIGMORE, ESQ.
18          Wilmer, Cutler, Pickering, Hale and Dorr LLP
            (Washington, D.C.)
19
20                    Counsel for Plaintiffs
21        RICHARD N. MORSE, ESQ.
            Young Conaway Stargatt & Taylor, LLP
22               -and-
          JAY P. LEFKOWITZ, ESQ., and
23        KAREN ROBINSON, ESQ.
            Kirkland & Ellis LLP
            (New York, New York)
24
25                    Counsel for Defendant
```

2

```
 1         THE COURT:  Which side is plaintiff on?
 2         MS. WIGMORE:  Here.  I am Amy Wigmore from
 3   Wilmer, Cutler, Pickering, Hale and Dorr.
 4         MS. ROGOWSKI:  Good morning, Your Honor.
 5         MR. MORSE:  Your Honor, good morning.  Karan
 6   Robinson and Jay Lefkowitz.
 7         THE COURT:  Good morning.  Nice to meet you.
 8         MR. LEFKOWITZ:  Good morning, Your Honor.
 9         MS. ROBINSON:  Good morning.
10         THE COURT:  Okay.  Did I see Mr. Lee's name?
11         MS. WIGMORE:  He is on trial at the moment.
12         THE COURT:  Will he be lead in this case?
13         MS. WIGMORE:  Yes, he will.
14         THE COURT:  Okay.  I have looked at your joint
15   status report, preparing it.  There are some differences
16   among you, or between you, as to at least when things should
17   be done, and perhaps what should be done, at least on a
18   couple of issues, or at least willfulness, I think, is a
19   bone of contention.
20         What I would like to start out by discussing is
21   the difference in the proposed timelines for completing fact
22   discovery.  Plaintiff is at just about a year exactly and
23   defense is at roughly seven months or eight months, I think
24   it is.
25         MS. WIGMORE:  Yes, Your Honor.
```

3

```
 1         THE COURT:  Why so long?
 2         MS. WIGMORE:  Your Honor, we believe we will
 3   need a year to complete the discovery.  We believe in this
 4   case the burden of fact discovery is going to fall
 5   disproportionately on our side because of the time periods
 6   involved.  The two patents at issue in the case are from
 7   1984 and 1989, respectively.  That is quite a long time
 8   period that has elapsed.  There has been no indication from
 9   defendants that they are willing to limit the scope or the
10   time period of discovery.
11         Many of the individuals involved in the patents
12   at this point are former employees.  There is a big
13   international side to this case, as one of the patents was
14   the result of work that was performed in England.
15         So there are many witnesses who may not be
16   employees who are located outside the country, documents
17   located outside the country.
18         In addition, we think that the scope of the
19   issues has not been there in the way that Teva has suggested
20   may be.  Infringement, as far as we can tell, is still an
21   issue in the case.  There will still need to be discovery in
22   on that.  We believe willfulness is still an issue.
23         THE COURT:  It may or may not be after today.
24         MS. WIGMORE:  There has been a paragraph for
25   certification.
```

4

```
 1         THE COURT:  I understand that.
 2         MS. WIGMORE:  Obviously, they are aware of our
 3   patents.  The rational and the paragraph for notice is very
 4   limited for their argument of invalidity and
 5   noninfringement.
 6         THE COURT:  What is the rationale for
 7   plaintiffs' contentions that there is willful infringement
 8   in light of the cases?
 9         MS. WIGMORE:  First of all, our case is
10   distinguishable from the Apotex case.
11         THE COURT:  Merely because of Paragraph 47?
12         MS. WIGMORE:  That is one reason.  Also, in the
13   Apotex case, it is very clear, although in that case it is
14   not automatic that there would be willful infringement, but
15   it is certainly possible if there are extraordinary
16   circumstances present.
17         THE COURT:  What might those extraordinary
18   circumstances be in an ANDA situation?
19         MS. WIGMORE:  The circumstances may be basically
20   a frivolous argument for invalidity or noninfringement.
21         THE COURT:  Wouldn't that go to exceptional case
22   rather than whether or not there has been willful
23   infringement, an exceptional case determination?
24         MS. WIGMORE:  Well, it depends how strong the
25   argument is.  If the argument that they are making is that
```

**5**

1  your patents are simply invalid because they are cobbling
2  together two pieces of prior art that we believe in no way
3  indicates invalidity, I think that is -- that could go to
4  willfulness.
5       THE COURT: But thinking about what infringement
6  is, making, using, selling, are we really talking about
7  infringement or are we talking about attorney misconduct for
8  which they should be punished?
9       MS. WIGMORE: I believe we are talking about
10  infringement. The Apotex case does not hold there cannot be
11  willful infringement from an ANDA filing.
12       THE COURT: I agree.
13       MS. WIGMORE: On these facts, the Court found
14  there could not be. If one files a Paragraph 4
15  certification, the statute is clear that that can constitute
16  infringement. If that is done with insufficient rationale,
17  where it's known that the patents exist, and that the
18  argument put together to support the notice is frivolous, we
19  believe that would constitute willful infringement.
20       THE COURT: Why doesn't a Paragraph 4 filing
21  make this --
22       MS. ROBINSON: Your Honor, I think Apotex and,
23  quite honestly, a recent decision, Apotex and a recent order
24  from Your Honor makes clear --
25       THE COURT: Two days ago,

**6**

1       MS. ROBINSON: Yes. -- makes clear that the
2  Federal Circuit does not believe that a mere paper filing,
3  simply filing an ANDA, constitutes infringement, could
4  constitute willful infringement. It is technical
5  infringement in order to get the ball started for purposes
6  of litigation. But there is no making, there is no offering
7  for sale.
8       Quite honestly, we think that Apotex makes clear
9  that the only avenue that is still available is absent some
10  actual damages. That is a separate issue. The 30-month
11  stay which runs as we actually started manufacturing the
12  product, that is a different issue.
13       In the absence of anything other than simply
14  filing an ANDA, if there is some type of misconduct with
15  respect to whether or not you have a good-faith basis for
16  making the argument, that would put it into the exceptional
17  case.
18       In our opinion, that is no different than a Rule
19  11 type consideration.
20       We would say that there is no basis for willful
21  infringement based on simply filing an ANDA.
22       Discovery misconduct again would go towards -- I
23  think that is what the Apotex case really hung its hat on,
24  discovery misconduct might be something that the Court can
25  consider. But again, that would be to the context of

**7**

1  whether or not the case is exceptional.
2       THE COURT: Wouldn't it be premature for the
3  Court, though, at this point to rule out the possibility
4  that discovery might adduce evidence that might support in
5  some way a willfulness contention?
6       MS. ROBINSON: We don't believe so, Your Honor.
7  At the moment, the best that you are going to find out is
8  the most that discovery could disclose is whether or not
9  there was a reasonable basis for the assertions made in our
10  ANDA Paragraph 4 certification.
11       That alone wouldn't give rise to a finding of
12  willfulness. So if you include it now, it certainly would
13  assist in narrowing the issues.
14       THE COURT: Sure would.
15       MS. ROBINSON: It would narrow the scope of
16  discovery. To the extent that plaintiffs' discovery
17  timeline includes time to do discovery on willful
18  infringement, that certainly would cut down on the time that
19  plaintiffs contend they need.
20       THE COURT: What is your response to that last
21  question?
22       MS. WIGMORE: On that point I don't believe
23  there would be a significant difference in time period --
24       THE COURT: But answer my last question. I
25  might agree with you on that. The question I posed to

**8**

1  counsel.
2       MS. WIGMORE: I am sorry. Which question?
3       THE COURT: Now I have to remember it. As to
4  whether it was premature.
5       MS. WIGMORE: I do believe it is premature,
6  because, as I mentioned before, the filing of the ANDA, the
7  Apotex case does not hold that that can't be the basis for
8  willful infringement. Here the circumstances are very
9  different. We have a Paragraph 4. The notice letter gives
10  a very, very flimsy rationale for the basis for that. I
11  think that alone can establish a prima facie case of
12  willfulness.
13       We would then need to discover facts to further
14  bolster that claim. But I think there is enough here to go
15  forward. Just as plaintiffs here are pursuing an
16  infringement defense and, from our side, we think it's quite
17  clear that there is infringement, I think the situations are
18  very parallel. And if they are able to pursue that claim,
19  then willful infringement should certainly be something that
20  we should be able to pursue.
21       THE COURT: Okay.
22       I am going to side with the plaintiff on this
23  one at this stage, and suggest that this probably will, this
24  issue may well be appropriate for summary consideration.
25  Whether or not I grant permission to file other motions for

9

1 summary judgment, it is likely that there will come time for
2 us to engage that process. There are not going to be
3 material facts in dispute. We will probably be able to take
4 a look at it on summary judgment, at least help narrow the
5 field for trial, if not for discovery.
6 　　　　MS. ROBINSON: Your Honor, on that issue, we
7 might suggest that this particular issue is particularly
8 amenable to earlier motions, dispositive motions.
9 　　　　THE COURT: Except I am not going to give you
10 more than one round. I might otherwise agree with you.
11 　　　　I am still not convinced that you need a year
12 for discovery in this case. You got to do a better job,
13 counsel, to convince me than you have done so far. I
14 understand you indicate that there are foreign entities
15 involved. Where?
16 　　　　MS. WIGMORE: In England.
17 　　　　THE COURT: England.
18 　　　　MS. WIGMORE: There may be witnesses who have
19 moved to other countries. But England is the primary area.
20 　　　　THE COURT: Are there any conventions that are
21 going to have to be utilized?
22 　　　　MS. WIGMORE: I believe the Hague Convention may
23 have to be utilized because of the former employees and
24 perhaps other parties involved. We are still investigating
25 that. That is certainly a possibility.

10

1 　　　　THE COURT: What is your view?
2 　　　　MS. ROBINSON: Your Honor, if we are talking
3 discovery in London, I understand that one of the inventors
4 on one of the patents at the time the patent issued was a
5 British citizen, employee of GSK. You know, our position on
6 that is, we are more than happy to travel to London. It's
7 really no more difficult going to London than it is to go to
8 California. And we are hopeful that we could work with
9 plaintiff so we wouldn't have to go through the Hague
10 Convention. This is, as I understand from plaintiffs'
11 counsel, a former employee. We would hope that we wouldn't
12 have to go through these extraordinary steps to get
13 potentially an inventor to give testimony during this case.
14 　　　　I just don't think that, we don't believe that
15 this type of discovery, this type of international discovery
16 that's being discussed by plaintiff really is the type of
17 discovery that requires extraordinary amounts of time to get
18 through discovery.
19 　　　　One of the other issues, I would point out, Your
20 Honor, is that there is four and a half months between the
21 close of fact discovery and the close of expert discovery in
22 plaintiffs' schedule. To the extent that that makes up a
23 large portion of the time frame that we are talking about,
24 we just think that that is probably more time than is really
25 required or necessary.

11

1 　　　　THE COURT: Four and a half months between fact
2 and expert?
3 　　　　MS. ROBINSON: Right. The completion of fact
4 discovery would be July 28th, under plaintiffs' schedule,
5 and the completion of expert discovery is not until November
6 30th. I guess that's four months. That's more time than we
7 think is really necessary. We certainly can test that.
8 　　　　THE COURT: I think what is going to drive this,
9 as well as these considerations, the considerations of what
10 is necessary, what is going to be necessary in terms of
11 time, I too am convinced that the parties will likely work
12 out matters such as with regard to inventors and people of
13 that nature so that you won't have to go through the Hague
14 Convention. I just not that long ago had GSK in front of
15 me, I think there were England issues, because there always
16 are with GlaxoSmithKline. And there was no difficulty in
17 this regard.
18 　　　　So I am not going to factor that into my
19 calculus in determining an appropriate amount of time for
20 fact discovery.
21 　　　　Are there other reasons, counsel, that you think
22 an entire year — let me share with you, also, I am really
23 disinclined to have this case come to trial as late as '07.
24 This case was filed a little more than three months ago. I
25 do disagree, based on the little bit that I admittedly have

12

1 in front of me, but I don't understand why this case would
2 be accurately characterized as more complex than any other
3 patent case that we have. Patent cases by definition are
4 complex civil litigation.
5 　　　　Why is this a complex patent case.
6 　　　　MS. WIGMORE: Your Honor, I think the issue is
7 not so much complexity as scope. Perhaps there are ways for
8 the parties to work together to narrow the scope somewhat.
9 One of the big concerns we have is time frame, because the
10 patents, the applications go back to 1982. We have got no
11 indication as of the present time that there will be any
12 time limitation on what is being sought in discovery.
13 　　　　THE COURT: You are concerned about validity,
14 the scope of validity?
15 　　　　MS. WIGMORE: Very much so. We have a very
16 large corporation that has gone through multiple corporate
17 changes, multiple employees who have come and gone. We are
18 very concerned about being able to gather that volume of
19 documents, particularly if we are going up to the present
20 time and if they are going to be asking for current
21 marketing documents and things of that nature. It is a very
22 large burden. We want to make sure that we can get there
23 what they are asking for in the time allotted.
24 　　　　THE COURT: The point that counsel makes is a
25 worthy one. It causes me to say this. I don't want to have

# EXHIBIT 3

Westlaw

--- F.Supp.2d ----
--- F.Supp.2d ---, 2006 WL 1037322 (N.D.Ill.)
(Cite as: --- F.Supp.2d ----)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
TRADING TECHNOLOGIES INTERNATIONAL,
INC., Plaintiff,
v.
ESPEED, INC., et al., Defendants.
No. 04 C 5312.

April 17, 2006.

**Background:** Patentee sued alleged infringers for
patent infringement, including willful infringement.
Alleged infringers moved to bifurcate trial and
discovery.

**Holdings:** The District Court, Moran, Senior District
Judge, held that:

9(1) alleged infringers were only slightly prejudiced
as a result of choice, absent bifurcation, between
asserting advice-of-counsel defense to willful
infringement claim and maintaining attorney-client
privilege;

11(2) alleged infringers did not establish that
bifurcation of discovery and trial would promote
judicial efficiency;

12(3) bifurcation of trial would prejudice patentee;
and

15(4) bifurcation was not warranted.

Motion denied.

**[1] Federal Civil Procedure 170A ☞1955**

170A Federal Civil Procedure
    170AXV Trial
        170AXV(A) In General
            170Ak1954 Separate Trials in Same Action
                170Ak1955 k. Grounds and Objections.
Most Cited Cases
Under three-step process for determining whether to
bifurcate trial, court must first determine whether

separate trials would avoid prejudice to a party or
promote judicial economy, then must be satisfied that
decision to bifurcate does not unfairly prejudice non-
moving party, and, finally, must not grant separate
trial if doing so would violate the Seventh
Amendment. U.S.C.A. Const.Amend. 7; Fed.Rules
Civ.Proc.Rule 42(b), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ☞1954.1**

170A Federal Civil Procedure
    170AXV Trial
        170AXV(A) In General
            170Ak1954 Separate Trials in Same Action
                170Ak1954.1 k. In General. Most Cited
Cases
Although ultimate decision to bifurcate trial is within
district court's discretion, because court is expected to
act to secure the just, speedy, and inexpensive
determination of every action, bifurcation remains the
exception, not the rule. Fed.Rules Civ.Proc.Rules 1,
42(b), 28 U.S.C.A.

**[3] Patents 291 ☞314(2)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k314 Hearing
                291k314(2) k. Scope of Inquiry and
Power of Court. Most Cited Cases
Patent cases are no exception to the rule that
bifurcation of trial is the exception, not the rule.
Fed.Rules Civ.Proc.Rules 1, 42(b), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ☞1955**

170A Federal Civil Procedure
    170AXV Trial
        170AXV(A) In General
            170Ak1954 Separate Trials in Same Action
                170Ak1955 k. Grounds and Objections.
Most Cited Cases
Party seeking separate trials has the burden of
showing that judicial economy would be served and
that the balance of potential prejudice weighs in favor
of bifurcation. Fed.Rules Civ.Proc.Rule 42(b), 28
U.S.C.A.

**[5] Patents 291 ☞312(8)**

--- F.Supp.2d ----                                                                                      Page 2
--- F.Supp.2d ----, 2006 WL 1037322 (N.D.Ill.)
(Cite as: --- F.Supp.2d ----)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k312 Evidence
                291k312(3) Weight and Sufficiency
                    291k312(8) k. Participation, Intent,
and Contributory Infringement. Most Cited Cases
In asserting willful patent infringement, plaintiff must
prove, by clear and convincing evidence, that alleged
infringer acted in disregard of the patent and had no
reasonable basis for believing it had a right to do the
acts.

[6] Patents 291 ☞227

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement
            291k227 k. Intent or Purpose, and
Knowledge. Most Cited Cases
Considering the totality of the circumstances, court
deciding claim of willful patent infringement is
required to consider mitigating or ameliorating
factors, including whether alleged infringer, when he
knew of the other's patent protection, investigated the
scope of the patent and formed a good faith belief
that it was invalid or that it was not infringed.

[7] Patents 291 ☞227

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement
            291k227 k. Intent or Purpose, and
Knowledge. Most Cited Cases
Alleged infringer's belief, for purposes of claim of
willful patent infringement, that patent was invalid or
not infringed can be established by showing good
faith reliance on the competent advice of counsel.

[8] Witnesses 410 ☞219(3)

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged
Communications
            410k219 Waiver of Privilege
                410k219(3) k. Communications to or
Advice by Attorney or Counsel. Most Cited Cases
When defendant relies on an advice-of-counsel
defense, it must waive its attorney-client privilege at
least with respect to the counsel's opinion letters.

[9] Patents 291 ☞314(2)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k314 Hearing
                291k314(2) k. Scope of Inquiry and
Power of Court. Most Cited Cases
Although, absent bifurcation of trial, alleged
infringers faced difficult choice between asserting
advice-of-counsel defense to claim of willful patent
infringement and maintaining attorney-client
privilege, alleged infringers were only slightly
prejudiced for purposes of their motion for
bifurcation. Fed.Rules Civ.Proc.Rule 42(b), 28
U.S.C.A.

[10] Witnesses 410 ☞198(1)

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged
Communications
            410k197 Communications to or Advice by
Attorney or Counsel
                410k198 In General
                    410k198(1) k. In General. Most Cited
Cases

Witnesses 410 ☞219(3)

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged
Communications
            410k219 Waiver of Privilege
                410k219(3) k. Communications to or
Advice by Attorney or Counsel. Most Cited Cases
Attorney-client privilege cannot be used as both a
sword and a shield.

[11] Patents 291 ☞292.4

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k292 Discovery
                291k292.4 k. Other Matters. Most Cited
Cases

Patents 291 ☞314(2)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 1037322 (N.D.Ill.)
(Cite as: --- F.Supp.2d ----)

291k314 Hearing
291k314(2) k. Scope of Inquiry and
Power of Court. Most Cited Cases
Alleged infringers did not establish that bifurcation of
discovery and trial would promote judicial efficiency
in patent infringement action involving claim of
willful infringement, given that alleged infringers did
not show that they were likely to prevail on the
merits of liability issue, and real possibility existed
that bifurcation would lead to additional discovery
disputes. Fed.Rules Civ.Proc.Rule 42(b), 28 U.S.C.A.

[12] Patents 291 ☞314(2)

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k314 Hearing
291k314(2) k. Scope of Inquiry and
Power of Court. Most Cited Cases
Evidence of liability and willfulness would likely
overlap in patent infringement action involving claim
of willful infringement, and therefore bifurcation of
trial would prejudice patentee, which, along with
facing substantial delay in final determination of its
action, would be forced to present same evidence in
two separate trials. Fed.Rules Civ.Proc.Rule 42(b),
28 U.S.C.A.

[13] Federal Civil Procedure 170A ☞1955

170A Federal Civil Procedure
170AXV Trial
170AXV(A) In General
170Ak1954 Separate Trials in Same Action
170Ak1955 k. Grounds and Objections.
Most Cited Cases
When issues to be presented in two trials sufficiently
overlap, bifurcation should be denied. Fed.Rules
Civ.Proc.Rule 42(b), 28 U.S.C.A.

[14] Patents 291 ☞227

291 Patents
291XII Infringement
291XII(A) What Constitutes Infringement
291k227 k. Intent or Purpose, and
Knowledge. Most Cited Cases
Factors considered in determining willfulness of
patent infringement include (1) whether alleged
infringer deliberately copied the ideas or design of
another, (2) whether alleged infringer investigated the
scope of the patent and formed a good faith belief
that it was invalid or that it was not infringed, (3)

alleged infringer's behavior as a party to the
litigation, (4) alleged infringers' sizes and financial
conditions, (5) closeness of the case, (6) duration of
alleged misconduct, (7) alleged infringers' remedial
action, (8) alleged infringers' motivation for harm,
and (9) whether alleged infringers attempted to
conceal their misconduct.

[15] Patents 291 ☞314(2)

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k314 Hearing
291k314(2) k. Scope of Inquiry and
Power of Court. Most Cited Cases
Bifurcation of trial was not warranted in patent
infringement action, inasmuch as limited prejudice
that alleged infringers would suffer, absent
bifurcation, due to choice between asserting advice-
of-counsel defense to claim of willful patent
infringement and maintaining attorney-client
privilege could be alleviated by proper jury
instructions, whereas prejudice to patentee resulting
from delay and being forced to present same
evidence twice could not be alleviated except by
denying bifurcation. Fed.Rules Civ.Proc.Rule 42(b),
28 U.S.C.A.

Paul H. Berghoff, Brian Richard Harris, Christopher
Michael Cavan, Dennis David Crouch, George I. Lee,
Jennifer M. Kurcz, Leif R. Sigmond, Jr., Marcus Jay
Thymian, Matthew J. Sampson, Michelle Lynn
McMullen-Tack, Paul S. Tully, Stephen Richard
Carden, McDonnell, Boehnen, Hulbert & Berghoff,
Ltd., Steven F. Borsand, Trading Technologies
International, Inc., Chicago, IL, for Plaintiff.
Raymond C. Perkins, Andrew M. Johnstone, George
Carter Lombardi, James M. Hilmert, Winston &
Strawn LLP, Chicago, IL, Gary A. Rosen, Law
Offices of Gary A. Rosen, P.C., Philadelphia, PA, for
Defendants.

### MEMORANDUM OPINION AND ORDER
MORAN, Senior District Judge.
*1 Plaintiff Trading Technologies International, Inc.
("TT") brought an action against defendants eSpeed,
Inc., ITSEcco Holdings Limited, and Ecco LLC for
patent infringement, including allegations of willful
infringement. Defendants eSpeed and Ecco now
petition this court to bifurcate the trial into two
separate parts: (1) liability, including non-
infringement, invalidity and unenforceability; and (2)
willfulness and damages. Defendants also move for

F.Supp.2d                                                                                    Page 4
--- F.Supp.2d ----, 2006 WL 1037322 (N.D.Ill.)
(Cite as: --- F.Supp.2d ----)

bifurcation of discovery, limiting current discovery to issues of liability, and holding off on discovery pertaining to willfulness and damages until completion of the liability trial.

## DISCUSSION

[1][2][3][4] Federal Rule of Civil Procedure 42(b) authorizes us to bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." The Seventh Circuit designed a three-step process to determine whether to bifurcate a trial:

First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy. Only one of these criteria-avoidance of prejudice or judicial economy-need be met before a court can order separation. Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party. Finally, separate trials must not be granted if doing so would violate the Seventh Amendment

*Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117, 1121 (7th Cir.1999) (internal citations omitted). Although the ultimate decision to bifurcate is within our discretion (*id.*), because we are expected to act to "secure the just, speedy, and inexpensive determination of every action" (Fed. R. Civ. P. 1), bifurcation remains the exception, not the rule. *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.,* 2005 WL 2405797, *4 (N.D.Ill.2005); *A.L. Hansen Mfg. Co. v. Bauer Products, Inc.,* 2004 WL 1125911, *2 (N.D.Ill.2004). Patent cases are no exception to this rule. *Clipco, Ltd. v. Ignite Design, LLC,* 2005 WL 2861032, *3 (N.D.Ill.2005); *Pfizer, Inc. v. Novopharm Ltd.,* 2000 WL 1847604, *1 (N.D.Ill.2000); *Real v. Bunn-O-Matic Corp.,* 195 F.R.D. 618, 620 (N.D.Ill.2000). The party seeking separate trials has the burden of showing that judicial economy would be served and the balance of potential prejudice weighs in favor of bifurcation. *Real,* 195 F.R.D. at 620.

In determining whether to bifurcate a trial, courts have looked to judicial efficiency, possibility of needless delay, potential juror confusion, the timing of the request for bifurcation, whether any filing delay was tactical, the overlap of evidence and witnesses between the two trials, and prejudice to each party. *Valois of America, Inc. v. Risdon Corp.,* 1998 WL 1661397, *3 (D.Conn.1998) (cataloging district court cases).

In this case, defendants contend that bifurcation will limit potential juror confusion, simplify the case, promote judicial economy, and quickly address the issues important to the entire futures trading industry. Most importantly, defendants argue that absent bifurcation and a partial stay of discovery they will be substantially prejudiced. Because this issue is the focus of defendants' argument for bifurcation, we will address it at the outset.

*2 Defendants suggest that absent bifurcation they will be prejudiced by having to choose between using an advice-of-counsel defense to willful infringement, and prematurely waiving attorney-client privilege. This quandary, recognized *in dicta* in *Quantum Corp. v. Tandon Corp.,* 940 F.2d 642 (Fed.Cir.1991), has since become popularly known as the "Quantum dilemma." In *Quantum,* the Federal Circuit stated:

"Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera,* reveal that the defendant is indeed confronted with this dilemma."

*Quantum,* 940 F.2d at 643-44.

[5][6][7][8] Defendants currently face the situation imagined in *Quantum.* In charging defendants with willful patent infringement, plaintiff must prove, by clear and convincing evidence, that " 'the infringer acted in disregard of the patent ... [and] had no reasonable basis for believing it had a right to do the acts.' " *American Medical Systems, Inc. v. Medical Engineering Corp.,* 6 F.3d 1523, 1530 (Fed.Cir.1993). Considering the "totality of the circumstances," a court is "required to consider mitigating or ameliorating factors." *Id.* One factor to be considered is "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.Supp.2d
--- F.Supp.2d ----, 2006 WL 1037322 (N.D.Ill.)
(Cite as: --- F.Supp.2d ----)

Page 5

that it was invalid or that it was not infringed." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed.Cir.1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed.Cir.1995). That belief can be established by showing good faith reliance on the competent advice of counsel. *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed.Cir.1998); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed.Cir.1996). Where a defendant relies on an advice-of-counsel defense, however, it must waive its attorney-client privilege at least with respect to the counsel's opinion letters. *See Quantum*, 940 F.2d 642. Defendants argue that this places them in an untenable situation-either forego a valid defense to willfulness or waive attorney-client privilege, disclose the letters and provide their adversary with a "roadmap to all [their] defenses and legal theories" (defs' mem. at 4).

*3 Defendants cite a number of cases wherein a district court, including this court, opted to bifurcate a patent trial where defendants were faced with a Quantum dilemma. *See Aptargroup, Inc. v. Owens-Illinois, Inc.*, 2003 WL 21557632, *1 (N.D.Ill.2003); *Sage Products, Inc. v. Devon Industries, Inc.*, 1994 WL 791601, *2-3 (C.D.Cal.1994). When such cases were decided, however, the Federal Circuit, and thus the lower courts, were operating under a presumption since overruled, that where the accused infringer did not produce an opinion of counsel to rebut willfulness, the finder of fact may legitimately infer that the accused infringer either failed to obtain an opinion of counsel or obtained an opinion that warned the infringer not to proceed. *See, e.g., Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1056 (Fed.Cir.1994). Therefore, an accused infringer faced the choice between waiver of attorney-client privilege and a negative inference that any infringement was indeed willful.

The Federal Circuit disposed of the adverse inference in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed.Cir.2004). In an effort to protect the attorney-client privilege, the Federal Circuit held that "no adverse inference that an opinion of counsel was or would have been unfavorable flows from an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel." 383 F.3d at 1341. Plaintiff argues that the elimination of the adverse inference in *Knorr-Bremse* alleviates any Quantum dilemma faced by defendants. Defendants, anticipating plaintiff's argument, contend that its Quantum dilemma is not premised upon the now defunct adverse inference,

that *Knorr-Bremse* does not discuss the Quantum dilemma or bifurcation, and that no case has interpreted *Knorr-Bremse* to limit *Quantum*. Specifically, defendants contend that absent bifurcation they "cannot assert an advice of counsel defense (thus risking a willfulness finding) without waiving the privilege (and disclosing its litigation strategy to TT)" (defs' mem. at 6).

Neither the parties, nor this court, could find any case construing the Quantum dilemma in light of *Knorr-Bremse*.[FN] We do not believe that means, as defendants would have us believe, that *Knorr-Bremse* did not affect or alter the Quantum dilemma. The quandary noted in *Quantum* existed in part because the adverse inference imposed on an alleged infringer who did not waive its attorney-client privilege weighed in favor of finding willful infringement. *See Translogic Technology, Inc. v. Hitachi, Ltd.*, 2004 WL 2260606, *3 (D.Or.2004); *F & G Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 391 (M.D.N.C.1999). In fact, *amicus* briefs filed with the Federal Circuit prior to its decision in *Knorr-Bremse* indicate that the Quantum dilemma, and issues similar to those raised by defendants in this motion, were underlying the decision in *Knorr-Bremse*. For example, one *amicus* brief stated concern that the opinion would prematurely disclose trial tactics, settlement-related positions, admissions on different issues, or the identity of expert witnesses. Jennifer K. Bush, John E. Gartman, & Elizabeth I. Rogers, *Six Patent Law Puzzlers*, 13 Tex. Intell. Prop. L.J. 1, 25 (*citing* Brief of Amicus Curiae Generic Pharmaceutical Association In Support Of Defendants-Appellants at 3). We believe that the Federal Circuit, in coming to its conclusion in *Knorr-Bremse*, assessed the considerations of the Quantum dilemma before us today.

*4 We do not believe, however, that *Knorr-Bremse* completely eliminated the prejudice to a party facing a Quantum dilemma. Although the failure to obtain an exculpatory opinion of counsel no longer provides an adverse inference or presumption that the opinion was unfavorable, there "continues to be 'an affirmative duty of due care to avoid infringement of the known patent rights of others,' " *Knorr-Bremse*, 383 F.3d at 1345-46. Therefore, an accused infringer still must choose between waiving its attorney-client privilege to disclose a favorable opinion letter from counsel, which would weigh in its advantage in assessing the "totality of the circumstances" in a willful infringement charge, and maintaining its attorney-client privilege, thus undercutting its defense. *See* Debra Koker, Note, *Fulfilling the "Due*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 1037322 (N.D.Ill.)
(Cite as: --- F.Supp.2d ----)

Page 6

Care" Requirement after Knorr-Bremse, 11 B.U.J. Sci. & Tech. L. 154, 163 ("By retaining the standard of due care and the totality of the circumstances considerations for finding of willfulness, it is likely that the patent opinion will continue to play a dominant role"); Bush et al., *Six Patent Law Puzzlers*, 13 Tex. Intell. Prop.. L.J. at 26 (arguing that, in light of the affirmative duty of due care, until the Federal Circuit clarifies what evidence can be presented regarding willful infringement, an alleged patent infringer may still face a Hobson's choice in determining whether to disclose opinion letters).

[9][10] Thus, we find that absent bifurcation defendants still face a difficult decision. It is true, however, that counsel always faces difficult tactical decisions in planning an attack or defense. It is also true that attorney-client privilege cannot be used as both a sword and a shield. *Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P.*, 266 F.Supp.2d 1144, 1148 (C.D.Cal.2003) (citing *Columbia Pictures Television. Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir.2001)). And even prior to *Knorr-Bremse*-and what we see as an easing of the defendants' quandary-many courts found that the weight of competing prejudices, including a Quantum-style prejudice, weighed in favor of one trial and denied a motion for bifurcation. *See Real*, 195 F.R.D. 618; *Edward Lowe Industries, Inc. v. Oil-Dri Corp. of America*, 1995 WL 609231 (N.D.Ill.1995) (although defendant faced a Quantum dilemma, by waiting until after the close of discovery to waive its attorney-client privilege, it was precluded from asserting an advice of counsel defense); *Dentsply Intern. Inc. v. Kaydex*, 1994 WL 376276 (N.D.Ill.1994) (determining that disclosure of attorney's opinions, reviewed *in camera*, would not so substantially prejudice plaintiff that separate trials were warranted); *Johns Hopkins Univ. v. CellPro*, 160 F.R.D. 30 (D.Del.1995). Therefore, we find that absent an adverse inference defendants are only slightly prejudiced.

*5 [11] Next, in assessing whether bifurcation would promote judicial economy, courts have looked to whether the circumstances of the case required "a) a need for voluminous documents to resolve damages issues; b) complex infringement issues; c) multiple patents, infringing products, claim, counterclaims, or parties; or d) the probability that the defendant would prevail on the infringement issue, thereby eliminating the need to address the issue of damages." *Real*, 195 F.R.D. at 621. Defendants contend that bifurcation would streamline a complicated patent case, avoid

potential juror confusion, and, if plaintiff's patents are held invalid, obviate the need for a time-consuming determination of damages and willfulness. Plaintiff counters by arguing that two separate trials would cause considerable delay-that damages discovery is already underway and the issues in each trial would substantially overlap.

Although defendants' argument that separate trials would promote judicial economy if defendants prevail, is true, they have not demonstrated that such success is likely. *Cf. Aptargroup, Inc.*, 2003 WL 21557632 at *1 (bifurcating the issues of liability and willful infringement partly because plaintiff's liability case had "taken a real hit from ... [the] *Markman* construction"). In this case we have yet to determine claim construction, but defendants took "a real hit" in the preliminary injunction hearing. In any case involving a damages determination, it would always be judicially efficient to bifurcate trials should defendants succeed in the liability phase. Bifurcation remains the exception, however, because "[i]n the event that liability is found, two separate trials with two separate juries at remote times would not serve judicial economy." *Real*, 195 F.R.D. at 624 (citing *Home Elevators, Inc. v. Millar Elevator Serv. Co.*, 933 F.Supp. 1090, 1092 (N.D.Ga.1996)).

Alternatively, defendants contend that "[e]ven assuming eSpeed and Ecco were to lose on liability, bifurcation would still simplify the litigation, because it would postpone inevitable ancillary litigation regarding privilege to a more convenient time, and simplify the parties' presentations to the jury" (defs' mem. at 2). Postponement of ancillary litigation does not necessarily weigh in favor of bifurcation-simply postponing dispute resolution does not increase judicial efficiency. And, as many courts before us have noted, bifurcation can lead to additional discovery disputes that actually add time and energy to a litigation. *See William Reber, LLC v. Samsung Electronics America, Inc.*, 220 F.R.D. 533, 538 (N.D.Ill.2004), *vacated in part by William Reber, LLC v. Sony Ericsson Mobile*, 2004 WL 2535074 (N.D.Ill.2004); *Maxwell Chase Technologies, L.L.C. v. KMB Produce, Inc.*, 79 F.Supp.2d 1364, 1374 (N.D.Ga.1999); *F & G Scrolling Mouse, L.L.C.*, 190 F.R.D. at 395; *THK America, Inc. v. NSK Co. Ltd.*, 151 F.R.D. 625, 633 (N.D.Ill.1993). Given the nature of this case thus far, we would not be surprised if the parties engaged in extensive motion practice wrangling over whether certain pieces of discovery were applicable to the liability case or the willfulness/damages case. Thus, we do not think that defendants have carried their burden of establishing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 1037322 (N.D.Ill.)
(Cite as: --- F.Supp.2d ----)

that bifurcation of discovery and trial would promote judicial efficiency.[FN2]

*6 [12][13] We turn now to analysis of potential prejudice to plaintiff should we decide to grant defendants' motion. Plaintiff suggests that it would be prejudiced by the delay caused by bifurcation and the time and expense of duplicating efforts in two separate trials. We have already addressed the issue of delay. With regard to duplication, it is true that where issues are to be presented in the two trials sufficiently overlap, bifurcation should be denied. *Keyes Fibre Company v. Packaging Corp. of America,* 763 F.Supp. 374, 375 (N.D.Ill.1991). In this case, defendants suggest that "[t]here is simply no overlap between the respective issues" of liability and willfulness/damages (defs' mem. at 7). Not surprisingly, plaintiff disagrees, pointing to an obviousness defense as an example of issue overlap (plf's response at 7). Although at least one court has expressly stated that raising such issues as obviousness and commercial success are insufficient to show a significant overlap of issues (*Princeton Biochemicals Inc. v. Beckman Instruments Inc.,* 180 F.R.D. 254, 256 (D.N.J.1997)), courts in this district have repeatedly held that bifurcation in similar cases was inappropriate because issues of liability and willfulness/damages do overlap. *See William Reber, LLC,* 220 F.R.D. at 540; *Real,* 195 F.R.D. at 625-626 (finding that the question of willful infringement is relevant to both liability and damages); *THK America, Inc.,* 151 F.R.D. at 629 (finding that the issues raised by an obviousness defense would be the "same in significant respects as the evidence relating to damages and, therefore, ought to be presented once rather than twice").

[14] Because willfulness is assessed according to a totality of the circumstances, the Federal Circuit has identified a number of factors to consider in making a willfulness determination.[FN3] *Knorr-Bremse,* 383 F.3d at 1343; *Read Corp.,* 970 F.2d at 827-28; *Tenneco Auto. Operating Co. Inc. v. Visteon Corp.,* 375 F.Supp.2d 360, 365 (D.Del.2005). The need to consider all of the factors implies that evidence of liability and willfulness will likely overlap. *A.L.* 2004 WL 1125911 at *3 ("much of the evidence establishing the totality of the circumstances will have already been presented in the initial liability phase"). Therefore, like the other courts in this district, we find bifurcation would result in prejudice to plaintiff, who, along with facing a substantial delay in final determination of the action, would be forced to present the same evidence in two separate trials.

[15] Although the limited prejudice against defendants can be alleviated by proper instructions to the jury, the prejudice against plaintiff cannot be alleviated without denying bifurcation (*See Real,* 195 F.R.D. at 621). Therefore, after careful consideration, we conclude that defendants have failed to carry their burden of establishing the advantages of bifurcation, and we deny their motion.

CONCLUSION

*7 For the reasons set forth above, we deny defendants' motion for bifurcation of both the trial and discovery relating to the trial.

FN1. With the exception of *A.L. Hansen,* 2004 WL 1125911, at *3, n. 4. In that case, decided before *Knorr-Bremse,* the court, in a footnote, made a prediction about the possible effect of *Knorr-Bremse* on *Quantum.* The court said, "The *en banc* Federal Circuit is currently reevaluating this inference. Of course, if the Federal Circuit were to eliminate the propriety of these negative inferences, the force of the *Quantum* dilemma would be greatly reduced."

FN2. With regard to pre-trial negotiations and discovery, this case appears more complicated than most. We are dealing here with the first of seven patent infringement suits brought by this plaintiff in this district. Unfortunately for defendants eSpeed and Ecco, motions and disputes in their case have been acting as the catalyst for similar motions and disputes in the cases that followed. In the end, however, this is really a case between one plaintiff and related defendants, with claims that defendants infringed two of plaintiff's patents. At its heart, it is not that complicated for a patent case. Therefore, additional issues of juror confusion and simplification of issues do not necessarily come into play.

FN3. Factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) alleged

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.Supp.2d                                                                                    Page 8
--- F.Supp.2d ----, 2006 WL 1037322 (N.D.Ill.)
(Cite as: --- F.Supp.2d ----)

infringer's behavior as a party to the litigation; (4) defendants' sizes and financial conditions; (5) closeness of the case; (6) duration of defendants' alleged misconduct; (7) defendants' remedial action; (8) defendants' motivation for harm; and (9) whether defendants attempted to conceal their misconduct.

N.D.Ill.,2006.
Trading Technologies Intern., Inc. v. eSpeed, Inc.
--- F.Supp.2d ----, 2006 WL 1037322 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1045535 (Trial Motion, Memorandum and Affidavit) Trading Technologies International, Inc.'s Reply Memorandum in Support of its Motion to Compel the Production of Documents and Things, Responses to Interrogatories, and Depositions (Mar. 29, 2006) Original Image of this Document (PDF)
• 2006 WL 1045533 (Trial Motion, Memorandum and Affidavit) Defendants eSpeed and Ecco's Opposition to Trading Technologies Motion to Compel (Mar. 23, 2006) Original Image of this Document (PDF)
• 2006 WL 1040385 (Trial Motion, Memorandum and Affidavit) GL Trade Americas, Inc. and FuturePath Trading LLC's Reply in Opposition to Trading Technologies International Inc's Motion for a Collective Protective Order (Mar. 2, 2006) Original Image of this Document (PDF)
• 2006 WL 740400 (Trial Motion, Memorandum and Affidavit) Trading Technologies' Opposition to Espeed's Motion to Compel (Feb. 23, 2006)
• 2006 WL 740398 (Trial Motion, Memorandum and Affidavit) Trading Technologies International, Inc.'s motion to Compel the Production of Documents and Things, Responses to Interrogatories and Depositions (Feb. 22, 2006)
• 2006 WL 740399 (Trial Motion, Memorandum and Affidavit) eSpeed and Ecco's Reply in Support of Their Motion to Bifurcate Introduction (Feb. 22, 2006)
• 2006 WL 740397 (Trial Motion, Memorandum and Affidavit) Defendants Gl Trade Americas, Inc.'s and Futurepath Trading Llp's Memorandum of Law in Support of Their Motion for A Protective Order (Feb. 14, 2006)
• 2006 WL 740396 (Trial Motion, Memorandum and Affidavit) Reply in Support of eSpeed and Ecco's Second Motion to Compel (Feb. 13, 2006)
• 2006 WL 740395 (Trial Motion, Memorandum and Affidavit) Trading Techonologies' Opposition to Defendants Espeed and Ecco's Motion to Bifurcate (Feb. 10, 2006)

• 2006 WL 740394 (Trial Motion, Memorandum and Affidavit) Trading Technologies' Opposition to Espeed's Motion to Compel (Feb. 6, 2006)
• 2006 WL 740393 (Trial Motion, Memorandum and Affidavit) Trading Technologies' Memorandum in Support of Its Motion to Enter a Collective Protective Order (Feb. 1, 2006)
• 2006 WL 428154 (Trial Pleading) Trading Technologies' Answer to Defendants Espeed, Inc., Espeed International, Ltd., Ecco LLC, and Eccoware Ltd.'s Amended Counterclaim (Jan. 25, 2006)
• 2006 WL 427541 (Trial Motion, Memorandum and Affidavit) eSpeed and Ecco's Memorandum in Support of Their Motion to Bifurcate (Jan. 23, 2006)
• 2006 WL 428153 (Trial Pleading) Defendants Espeed, Inc., Espeed International., Ltd., Ecco LLC, and Eccoware Ltd.'s Answer, Affirmative Defenses, Amended Counterclaim and Counterclaim to Plaintiff's Second Amended Complaint for Patent Infringement (Jan. 5, 2006)
• 2005 WL 3615996 (Trial Motion, Memorandum and Affidavit) Defendant's Opposition to Gary Kemp and Plaintiff's Motion to Quash (Nov. 29, 2005)
• 2005 WL 3615995 (Trial Motion, Memorandum and Affidavit) Trading Technologies' Supplemental Reply in Support of Its Motion to Reassign Related Civil Actions to Judge Moran (Nov. 11, 2005)
• 2005 WL 3615994 (Trial Motion, Memorandum and Affidavit) GL Trade Americas Inc. and GL Trade SA's Opposition to Trading Technologies International, Inc.'s Motion to Reassign (Nov. 8, 2005)
• 2005 WL 3286374 (Trial Motion, Memorandum and Affidavit) Trading Technologies' Reply in Support of its Motion to Reassign Related Civil Actions to Judge Moran (Oct. 28, 2005)
• 2005 WL 3286365 (Trial Motion, Memorandum and Affidavit) Peregrine Financial Group, Inc's Opposition to Trading Technologies' Motion to Reassign (Oct. 18, 2005)
• 2005 WL 3286369 (Trial Motion, Memorandum and Affidavit) Refco Llc%nl%n Opposition to Trading Technologies' Renewed Motion to Reassign (Oct. 18, 2005)
• 2005 WL 2611768 (Trial Motion, Memorandum and Affidavit) Trading Technologies' Reply to Third Parties Steve Brucato and Catus Technologies' Brief in Opposition to Trading Technologies' Motion to Compel (Aug. 17, 2005)
• 2004 WL 2083806 (Trial Pleading) Complaint for Patent Infringement and Jury Demand (Aug. 12, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 4

**REDACTED**

# EXHIBIT 5

**REDACTED**

# EXHIBIT 6

# REDACTED

# EXHIBIT 7

Westlaw.

Slip Copy                                                                 Page 1
Slip Copy, 2005 WL 3664014 (D.N.J.)
(Cite as: Slip Copy)

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.NOT
FOR PUBLICATION
United States District Court,D. New Jersey.
NOVARTIS PHARMACEUTICALS
CORPORATION, Novartis Pharma AG, and
Novartis International Pharmaceutical Ltd., Plaintiffs,
v.
TEVA PHARMACEUTICALS USA, INC.,
Defendant.
No. Civ.A.05-CV-1887 (DM.

Dec. 30, 2005.

Robert Baechtold, Hugh Barrett, Simon Roberts,
Fitzpatrick, Cella, Harper & Scinto, New York City,
for Plaintiffs.
Goodwin Procter, Boston, MA, for Defendant.

OPINION

CAVANAUGH, J.
*1 This matter comes before the Court upon
Defendant Teva Pharmaceuticals USA, Inc.'s (Teva)
motion to strike Plaintiffs Novartis Pharmaceuticals
Corporation, Novartis Pharma AG, and Novartis
International Pharmaceutical Ltd.'s ("collectively
Novartis") claims related to Teva's detailed statement
and request for exceptional case status. For the
reasons set forth below, Teva's motion is denied.

BACKGROUND

The instant case is a patent infringement action
arising under the Hatch-Waxman Act, which governs
the approval of generic drugs by the U.S. Food and
Drug Administration ("FDA"). Novartis is the owner
of United States Patent No. 5, 246, 937 ("the 937
Patent"). Complaint at ¶ 9. Pursuant to the Hatch-
Waxman Act, Teva filed an abbreviated new drug
application ("ANDA") seeking FDA approval to
commercially manufacture famciclovir tablets. Id. at
¶ 11. Teva's ANDA application included a
certification made pursuant to 21 U.S.C. §
355(j)(2)(A)(vii)(IV), (the "Paragraph IV
Certification") with respect to Novartis' 937 patent,
Id. at ¶ 13. Teva's Paragraph IV Certification stated
that the 937 patent is invalid or would not be

infringed by Teva's application. Id. On February 22,
2005, as required by the Hatch-Waxman Act, Teva
sent Novartis a notice letter, entitled "Detailed
Statement", explaining why Teva's proposed generic
version of Novartis' tablets will not infringe upon any
valid or enforceable claim of Novartis' patents. Id. at
¶ 15.

On April 8, 2005, after receipt of Teva's Notice letter,
Novartis filed a complaint against Teva for
infringement on the 937 patent on ground that the
notice letter was deficient Novartis alleges that Teva's
manufacture of famciclovir would constitute direct
infringement on one or more of the method claims of
the 937 patent. Comp. at ¶ 18. Teva filed an answer
to the Complaint on June 3, 2005, asserting
counterclaims for invalidity, non-infringement and
unenforceability of the 937 patent. Simultaneously,
Teva filed the instant motion to strike.

In its moving papers, Teva requests that this Court
strike Novartis' allegations in its Complaint that (1)
Teva failed to "provide the required detailed
statement and legal basis in its notice letter" as
required by 21 U.S.C. § 355(j)(2)(B)(ii) of the Drug
Price Competition and Patent Restoration Act of
1984 ("the Hatch-Waxman Act") (Complaint ¶ 20,
Prayer for Relief ¶ B) and (2) that this is an
"exceptional case" entitling Novartis to attorneys fees
under 35 U.S.C. § 285 of the patent statute.
(Complaint ¶ 21, Prayer for Relief ¶ F). The court
will examine each of Teva's requests as to strike in
turn.

DISCUSSION

Detailed Statement

Teva argues that the Federal Circuit's ruling in
Minnesota Mining and Manuf. Co. v. Barr Labs.,
Inc., 289 F.3d 775, 777 (Fed.Cir.2002) ("3M") bars
Novartis from pursuing a cause of action based upon
a deficient notice letter, and that this Court is
therefore precluded from considering Novartis'
allegations of a deficient notice letter. As such, Teva
is requesting the Court strike paragraph 20 of
Novartis' Complaint and paragraph B of the prayer
for relief.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3664014 (D.N.J.)
(Cite as: Slip Copy)

Page 2

\*2 In response, Novartis states that it is not asking the court to enforce the Notice Letter statute or declare the Notice Letter insufficient under the statute, causes of action prohibited under *3M*. Rather, Novartis avers that the purpose of its allegation of an incomplete or flawed Notice Letter is to support its claim of willful infringement/ litigation misconduct, appropriate under the Federal Circuit's holding in *Yamanouchi Pharmaceutical Co., Ltd. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1342 (Fed.Cir.2000). Furthermore, Novartis asserts that it has not identified any action it wishes the court to take with regard to the Notice Letter, nor any remedy it may be entitled to as a result of any lack of compliance with the notice statute.

In light of the fact that Novartis' allegations regarding the Notice Letter are in the Complaint to support Novartis' request for exceptional case status, the Court does not find it necessary strike Novartis' allegations regarding the insufficiency of the Notice Letter.

*Exceptional Case Status*

Tevat requests that the Court strike those portions of the Complaint that concern Novartis' claim for exceptional case status, on the grounds that the filing of an ANDA cannot support the finding of willful infringement for purposes of awarding attorneys fees under 35 U.S.C. § 285. Teva relies on *Glaxo Group Limited v. Apotex, Inc.*, 376 F.3d 1339 (Fed.Cir.2004), where the Federal Circuit found that the evidence presented by Glaxo, which consisted mainly of an ANDA filing, did not support a claim for willful infringement for purposes of awarding attorneys fees.

Under 35 U.S.C. § 285, "the [C]ourt in exceptional circumstances may award reasonable attorneys fees to the prevailing party." Furthermore, 35 U.S.C. § 271(e)(4) specifically states that when infringement is based on the filing of an ANDA, "a court may award attorneys fees under Section 285." In *Yamanouchi*, the Federal Circuit held that a patentee in a ANDA case can recover attorney fees for willful infringement/ litigation misconduct under the appropriate circumstances. 231 F.3d 1339, 1342. *Yamanouchi* involved a similar pattern of facts as those alleged here: the filing of an ANDA, the Paragraph IV certification, the Notice Letter, and litigation misconduct, and the Federal Circuit found exceptional case status warranted.

Novartis argues that Teva's reliance upon *Glaxo* is incorrect, and that *Yamanouchi* controls. This Court agrees. Although Teva is correct in stating that *Glaxo* stands for the proposition that an ANDA filing, without more, does not constitute willful infringement, it is possible that Novartis may be able to show activity in addition to the ANDA filing to support the issue of wilfulness. As such, under *Yamanouchi*, Novartis is entitled to proceed with litigation under the current state of the pleadings. If after discovery the evidence is such that Novartis' claim cannot be supported, Novartis may consider voluntarily withdrawing its claim or Teva may renew its application.

\*3 In light of the above, Teva's request to strike portions of the Complaint relating to Novartis' request for exceptional case status must be denied.

*CONCLUSION*

Based on the foregoing, Teva's motion to strike Novartis' claims related to Teva's detailed statement and request for exceptional case status is denied. An appropriate Order accompanies this Opinion.

D.N.J.,2005.
Novartis Pharmaceuticals Corp. v. Teva Pharmaceuticals USA, Inc.
Slip Copy, 2005 WL 3664014 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2099258 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Teva's Motion to Strike Plaintiffs' Claims Related to Teva's ""Detailed Statement" and for ""Exceptional Case" (Jul. 27, 2005)
• 2005 WL 2099257 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendant's Motion to Strike Claims (Jul. 13, 2005)
• 2005 WL 1249676 (Trial Pleading) Complaint for Patent Infringement (Apr. 8, 2005)
• 2:05cv01887 (Docket) (Apr. 8, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 8



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BIONE CO., LTD.,

                Plaintiff,

         v.                              03 CV 9055
                                         03 CV 922
DR. REDDY'S LABORATORIES, LTD.,          04 CV 0055
et al.,

                Defendants.

------------------------------x

                                         New York, N.Y.
                                         October 13, 2004
                                         2:15 p.m.

Before:

                    HON. GERARD E. LYNCH,

                                         District Judge

APPEARANCES

FITZPATRICK CELLA
    Attorneys for plaintiff
BY:  ROBERT L. BAECHTOLD
    BRUCE M. WEXLER
    JOSEPH M. O'MALLEY, JR.

SULLIVAN & CROMWELL
    Attorneys for plaintiff
BY:  BRUCE M. WEXLER

BUDD LARNER GROSS PICILLO ROSENBAUM GREENBERG & SADE
    Attorneys for defendant Dr. Reddy's Laboratories
BY:  LOUIS H. WEINSTEIN
    MAURICE ROSS

GOODWIN PROCTER
    Attorneys for defendant Teva Pharmaceuticals
BY:  DAVID M. HASHMALL
    FREDERICK REIN

ROTHWELL FIGG ERNST & MANBECK
    Attorneys for defendant Mylan Laboratories
BY:  JOSEPH A. HYNDS

Jackers

THE CLERK:  Eisai v. Dr. Reddy's Laboratories, et al.

Counsel, if you would identify yourselves.

MR. BAECHTOLD:  Good afternoon, your Honor.  Robert
Baechtold for the plaintiff.

THE COURT:  Mr. Baechtold.

MR. ZILCHIN:  Good afternoon, your Honor.  David
Zilchin also for plaintiff.

THE COURT:  Do we need everybody?  Who is going to
speak?

MR. BAECHTOLD:  I am, your Honor.

THE COURT:  OK, Mr. Baechtold.  Who on behalf of the
defendants?

MR. HASHMALL:  Your Honor, good afternoon.  David
Hashmall for defendant Teva Pharmaceuticals.

THE COURT:  Mr. Hashmall, are you going to be arguing
this motion?

MR. HASHMALL:  Yes, I am, your Honor.

THE COURT:  OK.  Reading the papers, even after this
has been discussed at least twice in informal conferences,
leaves me with the impression that we are not arguing about
what we purport to be arguing about in this motion.  In the
narrowest sense, let me ask Mr. Baechtold, isn't it agreed that
if the defendants are entitled to judgment on the pleadings,
for want of a better term, that plaintiffs are not entitled to
an allegation of willful infringement?

indexes

MR. BAECHTOLD: No, your Honor, it is not agreed.

THE COURT: Is there such a thing as a declaration of willful infringement as a remedy for patent infringement?

MR. BAECHTOLD: Certainly a basis for a finding of willful infringement, and that can result in an award of attorneys' fees.

THE COURT: But there are many findings that the court could make or that a jury could make along the way to granting relief. We don't in a slip and fall case say that the plaintiff gets damages and also a declaration of causation or a declaration of negligence or anything of the sort. Do we?

MR. BAECHTOLD: No, we don't, your Honor, but historically, willful infringement has been an issue that is pleaded and decided as an issue, even though it is just a predicate for finding the case to be exceptional, justifying the award of attorneys' fees.

THE COURT: Isn't it more because it is a predicate for for enhanced damages under section 38?

MR. BAECHTOLD: No, it is not, your Honor, and that was clear in the recent en banc case in Knorumpa, where there were no damages. That is the case that the Federal Circuit took en banc to decide whether you could draw an inference from the assertion of attorney-client privilege. In that case, there were no sales, there were no actual damages, there was no possibility of a multiplier of actual damages, and the case was

Arnold is

went back to the district court to determine willful

infringement. It actually came up on a finding of willful

infringement and came back solely as the basis for an attorney

fee award.

THE COURT: Right, but the court didn't say that there

needs to be a judgment of willfulness or that a jury needs to

find willfulness, did it?

MR. BERCHTOLD: If that is the basis for the

exceptional case finding it is a necessary finding, and if

there is a jury in the case -- I don't recall if there was a

jury or not, but if there is, that is a jury damage. That is a

separate issue presented to the jury.

THE COURT: I am very puzzled by that. I had been

told, and I have even done it, that you put the issue of

willfulness to a jury. I haven't thoroughly considered this,

but I notice in Sand's jury instruction treatise it says that

the Federal Circuit has approved of putting willfulness to a

jury, though the case that is footnoted for that proposition is

simply one in which it was put to a jury, apparently, and the

Federal Circuit didn't say much one way or the other about it,

and I am not sure I understand why it needs to be put to a jury

in a patent case, particularly if the only reason why it is in

issue is because it is one of many potential predicates for

finding an exceptional case and awarding attorneys' fees.

MR. BERCHTOLD: The determination of exceptional case

8

Jackeis:

1    is placed in the hands of the court, bench, according to the

2    statute. So the question is, if you have a jury trial you then

3    have to make the determination who will decide the underlying

4    fact issue, that is relevant to the question of exceptional

5    case.

6        THE COURT:  But there are a lot of fact issues that

7    might be relevant.  Litigation misconduct, for example, is one

8    basis for finding exceptional case, and I have never heard of

9    submitting that to a jury to decide whether there was

10   litigation misconduct.  There are many things, I am sure, in

11   patent law that I haven't heard of, but that would seem very

12   odd, wouldn't it?

13       MR. BAECHTOLD:  Yes, it would, your Honor.

14       THE COURT:  I can think of reasons why willfulness is

15   different in the ordinary patent case.  In the ordinary patent

16   case the jury is deciding what did the defendant do, what are

17   its products like, do those products infringe, and how did it

18   come to be, as a sort of naturally allied question, that the

19   infringing product got out on the market.  But in this case I

20   am having a harder time seeing why willfulness becomes part of

21   the case in the same way.

22       MR. BAECHTOLD:  I think the answer, your Honor, is

23   whether the case is decided by judge or jury.  If it is decided

24   by the judge and the judge makes a finding on exceptional

25   case -- and I think there is no doubt that we are entitled to

```
       techniea
    1   plead for the relief that we can get on the exceptional case
    2   the court has to articulate its findings of fact supporting
    3   that. One of the allegations we make is that their
    4   infringement was willful. Whether we plead it as a separate
    5   allegation or not, if your Honor decides it was willful, it
    6   becomes a basis for finding the exceptional case.
    7           THE COURT:  Then why aren't the defendants right that
    8   this really all depends on who is the prevailing party? I
    9   mean, there are a lot of cases in law in which there is a
   10   discretionary possibility of awarding attorneys' fees, and the
   11   court has to give its reasons for exercising its discretion,
   12   and sometimes those reasons have to do with questions of fact,
   13   what actually happened. But we typically leave that until we
   14   see who won, and at that point I suspect that what most judges
   15   do is have some preliminary sense of, does this seem to be
   16   really one-sided or not.
   17           At that point there may be fact questions. Maybe a
   18   party says, well, our former counsel misled us or something,
   19   and even though this looks like it was a reasonable, fair side
   20   litigation position, it wasn't our fault, we got bad legal
   21   advice, and maybe then there is some inquiry into that.
   22           But in the first instance you do the merits, and you
   23   don't have discovery up front into what was the other side's
   24   lawyers telling it from day one of the litigation. First you
   25   find out who wins, and the winner may have been told by some
```

8

inckeless

1    lawyer from the beginning, it's a terrible case, you shouldn't

2    even bring it, but if they win, we never hear about that

3    mistake and we never inquire into whether it was a frivolous

4    claim or not, in somebody's opinion, as of when it was brought

5    It is only when you lose that there may be further scrutiny of

6    whether your position was ever justified.

7        MR. BERCHTOLD:  It is certainly true, your honor, that

8    you make the determination of exceptional case after you know

9    who is the prevailing party.  But there is nothing that says

10   that you can't make that concurrently with the decision on the

11   merits.  I can see in some cases it might make sense, it might

12   be efficient to separate the two and say we are not even going

13   to think about it until we know who the prevailing party is,

14   but that always depends on the facts of the case.

15       First we can say that Yamanouchi was an approved

16   procedure, so in one sense you can say the court can't go wrong

17   by doing what Judge Owen did in Yamanouchi, which was to allow

18   the discovery to go forward, hear the case on the merits, and

19   determine whether or not the certification was baseless and

20   whether or not the facts at trial which tracked the

21   certification were also baseless.  We certainly think it is

22   more efficient to do that.

23       THE COURT:  But is there any indication in Yamanouchi

24   that the court had ordered discovery on attorneys' opinions?

25   There is a reference in the opinion, I thought, that one party

Gackelsa

put in

    MR. BAECHTOLD:  Page 1347.

    THE COURT:  Yes, on page 1347 the court refers to Danbury's choice to produce during trial an opinion from a patent attorney.  That doesn't indicate that if there were no such choice, if there were no reliance on advice of counsel, that anyone would get to inquire into what advice Danbury's counsel had given it, with a view to, if Danbury loses, asserting a claim for attorneys' fees on the grounds that they proceeded in bad faith and willfully contrary to the advice of their lawyers.

    MR. BAECHTOLD:  Yes.  In fact, your Honor, in the Yamanouchi case they did not elect to waive privilege and they did not elect to rely on the advice of counsel and they withheld every document that was a basis for privilege but one opinion.  I was counsel for the plaintiff.  I can't tell you what their strategy was in deciding to give up that one opinion while asserting they were not relying upon it.  But that is the fact of the case.

    THE COURT:  Then if I follow the procedure that happened there, I would be on solid ground, it sounds like, in not requiring defendants to give up otherwise privileged information, at least at this stage.

    MR. BAECHTOLD:  I think unless they decide to waive the privilege and rely on it, there is no compulsion to give it

10

4ackelea

1    up. We might argue about the extent to which providing a

2    certification is in fact some sort of a waiver.

3        But the Yamanouchi case made clear that it was the

4    certification. There was a duty under the Hatch-Waxman Act to

5    use due care. That was a key factor in finding that the case

6    was exceptional.

7        THE COURT: It was objectively baseless.

8        MR. BASCHTOLD: It was objectively baseless. It may

9    turn out that Teva decides they don't want to rely on advice of

10   counsel. In that case we can't argue that they waived it, they

11   simply can't rely on it. It may well be one of the things we

12   want to explore, within the company was there a recognition

13   that their case was dead on with the Yamanouchi case and in

14   fact the certification was baseless, and there was a race to

15   get to the FDA.

16       The goal in these cases, the plum always is that the

17   generic wants to be the first one to certify, and the first

18   available data for certification was the four-year anniversary

19   of our client's approval. We got three on that day. So we

20   don't know until we get the discovery, but it may be that Teva

21   cobbled this thing together and said let's get a piece of paper

22   on file so we get a priority. If that is so, we think we are

23   entitled to discover that and we think that should be part of

24   the trial on the merits, not something that your Honor comes

25   back to three months, six months, a year after you have ruled

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Aadkelsa

11

the arguments on the merits.

One of the reasons for believing this in fact

likely is, as your Honor knows, at least one defendant has

agreed that the invalidity defense is baseless and they have

dropped it. Teva is asserting it. We couldn't force them to

drop it. They are asserting inequitable conduct as their only

defense, but it still comes down to efficiency. First, there

is no motion to sever and stay the issue of exceptional case.

So whatever is pertinent to exceptional case one must say is

fair game to discovery. So we could ask, do you have an

attorney opinion. If they say no, we are going to assert the

attorney-client privilege and not produce it. We can't take it

any further than that. But we can ask. If they choose to rely

on it, then they produce it.

THE COURT: Let me try and get the answer to what I

have to think is a somewhat metaphysical question. You

certainly take the position, and I will ask Mr. Hochman if he

agrees, although I don't know how he could disagree, that the

statute explicitly says that one possible remedy in this kind

of lawsuit is an award of attorneys' fees for exceptional case.

MR. BAECHTOLD: Correct.

THE COURT: I take it your reading of Yamanouchi after

Glaxo is that one possible way that a 271(e)(1) case can be

exceptional is if the infringement was willful.

MR. BAECHTOLD: Yes, your Honor, and we say Glaxo has

Jackelis

1    not -- this is a motion for judgment on the pleadings, and they

2    correctly stated the legal basis for that in their brief. Yet

3    you have to show that plaintiff can prove no set of facts to

4    support the claim.

5         So the question is, does Glaxo say that in an ANDA

6    case there is no conceivable set of facts in which anyone could

7    prove willful infringement? But all Glaxo holds is that the

8    mere filing -- and in their brief they leave out "mere"

9    constantly -- of an ANDA alone can't be the basis for a willful

10   infringement claim.

11        THE COURT: They also say the mere filing of an

12   application or certification.

13        MR. BAECHTOLD: Yes, and four times in the Glaxo case

14   they refer to the "mere filing." Three times they only say "an

15   application." The fourth time they throw in the words "or

16   certification." There was no certification in the Glaxo case.

17        The best you could say about that statement is that it

18   is dictum, but it clearly has nothing to do with the facts of

19   that case, and in fact they distinguish Yamanouchi by saying

20   unlike Yamanouchi, Glaxo didn't make a certification.

21        THE COURT: Well, yes, but they also distinguish

22   Yamanouchi, and Yamanouchi itself in the circuit says we don't

23   have to rely on the certification because there was litigation.

24        MR. BAECHTOLD: Yes. Yamanouchi says we don't need to

25   get there. Glaxo says, if all you've got at the time filing of

13

jacketed

1    an ANDA is the failure to get an attorney opinion, which is the

2    only thing the court relied upon -- there were no findings in

3    the case they presented -- you can't say that's willful.

4    That is all that Glaxo says.  Glaxo doesn't say there is no

5    conceivable basis, and the two district courts who have looked

6    at this so far have said the same thing.

7         If at some point the defendant wants to make a motion

8    for summary judgment, saying OK, we have had discovery now and

9    we say that there is no genuine dispute of fact and we are

10   entitled to summary judgment of no willfulness, that is a

11   different animal.  What they are trying to do is stop this

12   before we get any discovery.

13        THE COURT:  What are the facts, or example of facts

14   that would show willfulness?  Let me try one out and see if you

15   can think this, and, if not, you can give me a letter one.  The

16   filing of an application based on a certification that is

17   objectively and subjectively baseless?

18        MR. BASCHTOLD:  That would be one element, yes, your

19   Honor, because the Yamanouchi case says that the Hatch-Waxman

20   Act, because of the certification requirements that weren't in

21   the Glaxo case, imposes a duty of due care on the generic.  I

22   gave your Honor an example before.  I don't know who approved

23   this in discovery, but if people inside the Teva organization

24   said, you know, we have all read the Yamanouchi case, this

25   certification we are filing we don't have a chance on but we

```
                                                              44

    sackelss

1   have to get it on file, that is an additional fact.  In

2   Yamanouchi, nobody said that Danbury didn't believe in the

3   case.  They said the case was objectively baseless, but maybe

4   they had a misguided belief in the case.  If we were to show

5   that the Teva didn't believe in the case, that would establish

6   willfulness, but if we never get discovery, we never find out

7   that's one of the facts.

8           THE COURT:  All right, I think that may do.  Mr.

9   Hadzmall

10          MR. BAECHTOLD:  Your Honor, there was one other thing

11  I wanted to mention.  Your Honor asked about making the finding

12  of exceptional case concurrent with the merits of the case

13  That is what happened in Yamanouchi and the circuit approved

14  it.  There is also a case called I Tech Systems where the

15  plaintiff was held to have presented a frivolous case, the suit

16  concurrently with the merits, because that was the most

17  appropriate time for the court to look at those issues.

18          THE COURT:  OK, and just again, to get at what

19  difference it all makes, and you are saying if this motion were

20  granted or what the defendants are really up to or something

21  is, what is at stake is the subjective mental state of

22  executives of the defendants in filing their application.

23  That's really what this is all about.

24          MR. BAECHTOLD:  I would say that's one of the possible

25  facts.
```

15

4ackelaa

1      THE COURT:  Because I am not sure how you have

2  discovery into the objective baselessness of a claim other than

3  by having discovery into the merits of the claim.

4      MR. BAECHTOLD:  And we have the certification and we

5  know exactly what it says.  Your Honor can read it and see that

6  it tracks exactly the Yamanouchi case.

7      THE COURT:  I understand that, but I am saying you

8  don't need a willfulness allegation to inquire into the

9  objective merits of the claim.  It is either objectively

10  meritorious or objectively meritless or objectively so

11  meritless that it is frivolous.  So the only thing that is

12  extra here is the mental state of the defendants, a recognition

13  within the company at the time that what they were doing was

14  baseless, and when I say that is one example, I can't conjure

15  up every possible example.

16      MR. BAECHTOLD:  But what I am sure is going to happen,

17  although there has been no motion to sever and stay, that is

18  exactly what Teva has in mind, and as soon as we start asking

19  discovery questions, if your Honor grants this motion, every

20  question is going to come back that relates to willfulness.

21      THE COURT:  I think the defendants' position now is

22  that they don't need to sever anything, that is just your

23  relevant period, or it becomes relevant only to some attorneys'

24  fees claim later on.

25      MR. BAECHTOLD:  That is their position, but we say it

14ckeisa

16

1    is perfectly appropriate for you to decide exceptional case

2    concurrently with the decision on the merits.  In order to do

3    that, we have to have the discovery, and when you reveal the

4    reviewer's notes they even recommend taking that promptly after

5    the merits decision.

6         So if it is not decided we are going to have a raft of

7    discovery disputes that are going to come to you, because in

8    each case they will say we are not going to give discovery on

9    that, that is only for after there is a determination on the

10   merits.

11        THE COURT:  All right.  Mr. Hashmall, is Mr. Baec told

12   right that that is what this is really about?

13        MR. HASHMALL:  There are two things I think this is

14   about, your Honor.  One is simply the issue that the plaintiff

15   is not entitled to seek a declaration that the defendants, my

16   client or the other defendants, have willfully infringed the

17   patent.

18        THE COURT:  Suppose I give you that, that there is no

19   separate relief known as a declaration of willfulness.  Isn't

20   it nevertheless the case that they are entitled to seek

21   attorneys' fees, they are entitled to argue that this is an

22   exceptional case under section 285, and willfulness is a

23   possible component, at least, of something being an exceptional

24   case?

25        MR. HASHMALL:  I agree that the prevailing party.

17

lacking

whether it be Eisai, Teva or Dr. Reddy, has the right to make

an application pursuant to section 285 to have the case

declared exceptional and have an award of attorneys' fees, and

there are a host of cases that talk about the factors that a

court should consider in determining whether a case is

exceptional or not. I think what the Glaxo v. Apotex holds is

that when the active infringement alleged is artificial

pursuant to 271(e)(ii), the willfulness component drops out.

There cannot be willful infringement -- I mean, I don't know

how else to read the holding of that case, and I think that

what Eisai tries to rely upon about whether there has been

certification or not is a distinction without difference, our

Honor.

         THE COURT: Maybe you can enlighten me on how there

can be a distinction without certification.

         MR. HASHMALL: If you have the statute in front of

you, 271(e)(ii), it says it shall be an active infringement to

submit -- that's the preamble to (e)(ii). B. An application

under section 512 of such act -- I am going to skip it a little

bit -- which is claimed in a patent, or the use of which is

claimed in a patent, and then it continues: if the purpose of

such submission is to obtain approval under the act to engage

in the commercial manufacture, use or sale of a drug.

         There is a little quirk in these biologics. In the

Glaxo v. Apotex case, and I think we also cited the Teva case,

16

Jackson

1   in our brief. Biologics did not use to have a list of patents

2   in the orange book when they were NDA approved and they used

3   not to have to file certification when you want to market a

4   generic version of a biologic drug. But you still had to file

5   an NDA and that is what happened in Glaxo v. Apotec.

6   Therefore, the court said, we have jurisdiction under

7   271(e)(ii).

8          If you look at the Northern District of Illinois

9   discussion in Teva v. Abbott, which we reference in page 3 of

10  our reply brief, the court goes through an extended discussion

11  on the history of the biologic and the nonbiologics and the

12  difference in statutory scheme, and concludes, as in the Glaxo

13  case, that either way there is jurisdiction for an artificial

14  enactment infringement.

15         That brings us to the Glaxo v. Apotec decision, which,

16  as I read it, is based on two fundamental principles, one that

17  271(e)(ii) infringements are different than every other patent

18  in the statute. It is an artificial infringement which the

19  court in Eli Lilly defined as simply for the basis of creating

20  jurisdiction in a case in controversy. That rationale for the

21  Federal Circuit's decision applies equally whether there is a

22  certification or not. The only issue that is relevant is that

23  you have jurisdiction under 271(e)(ii).

24         THE COURT: It may be an artificial act but it is an

25  artificial infringement for the purpose of creating litigation

19

4ackel6a

about the validity of the patent.  Isn't that the point?

MR. HASHMALL:  Exactly, before an actual active

infringement takes place.

THE COURT:  But does that mean that a generic

manufacturer could undertake a thorough study of a patent

decide that it was perfectly valid, get all the scientific and

legal advice they can garner, all of which tells them it is

perfectly valid, and then they can go in and file an

application for the purpose of triggering an expensive lawsuit

in the hope of coercing somebody into settling?  I guess you

haven't much chance of settling if there is a billion dollars

at stake.  But theoretically, isn't the concept of a bad faith

application a perfectly intelligible concept?

MR. HASHMALL:  It is a concept that would be relevant

to a potential finding of exceptional circumstances, just as,

your Honor, if we expect to prevail at trial and we expect to

have this court rule that Eisai engaged in inequitable conduct,

if at the end of the trial we prevail we intend to ask your

Honor to rule this case exceptional, that they did not do a

good faith investigation of their ability to pursue a patent

infringe claim against my client.  It would be the same flip

side.  I agree that if you rule against us they can seek to

obtain a ruling of exceptional circumstances based upon a

baseless, bad faith filing.  I don't dispute that.  Nor would

they dispute, I think, that we would have the right to seek

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

Hackeisa

exceptional circumstances if it could be shown that they had no

good faith basis to file the lawsuit to begin with.

THE COURT: If I follow what you just said, how is

that different from willfulness, bad faith?

MR. HASHMALL: I read Yamanouchi talking about

objectively baseless. Perhaps there is an element of

subjective intent -- I am not sure, your Honor.

THE COURT: Wouldn't it be relevant in the exercise of

a court's discretion to say this looks like a very, very thin

claim, but still, if the party had good faith I'm not going to

stick them with attorneys' fees? That would be something that

is highly relevant, isn't it, whether not only was it baseless,

always a kind of judgment call between you lose and you lose so

badly that we are going to say this is totally baseless? Isn't

it germane to that, whether the party knew perfectly well it

was baseless and had bad motives in doing what it did? That

would make it a pretty exceptional case.

MR. HASHMALL: Yes, but if you read Glaxo, they are

careful to distinguish bad faith finding versus willful

infringement to support exceptional circumstances. Maybe the

difference is more semantic than substance. It is hard to say,

your Honor, unless you are confronted with a specific issue of

discovery or disputed fact relevant to the two issues. But

certainly Glaxo's holding is that there can be no willful

infringement in the ANDA case.

tackeida

1       THE COURT:  They don't say that there can be no

2  willful infringement in an ANDA case.  If they did, it would be

3  much clearer and even Mr. Baechtold's creative argument, I

4  think, would be taxed.  But I think they say that the mere

5  filing of an application or certification -- I will give you

6  that for this round -- can't be the basis for a finding of

7  willfulness.

8       Now, I don't know what is the difference between a

9  mere filing of something and a filing of something in bad faith

10  that is outrageously baseless.  But they don't actually say

11  that a filing of an application for certification can never be

12  a component of a finding of willfulness, do they, or that there

13  can't be such a thing as willfulness in an ANDA case?  Is there

14  language to that effect?

15       MR. HASHMALL:  This is a quote from I believe page

16  1350.  It says "while a myriad of factual circumstances may

17  give rise to a finding that a case is exceptional for purposes

18  of 35 USC 285, this court has limited what types of conduct

19  might give rise to an award of attorneys' fees for purposes of

20  section 270(e)(iv)."

21       The only limitation they could possibly be referring

22  to, it seems to me there, is that an ANDA filing or

23  certification cannot be the basis for willful infringement.

24       THE COURT:  What they go on to say is that in

25  Yamanouchi this court determined that a baseless and wholly

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

deckelsa

1    unjustified certification when combined with litigation

2    misconduct warranted an exceptional case finding.

3         Again, that may mean that a baseless and wholly

4    unjustified certification standing alone can't be the basis for

5    an exceptional case finding, but it seems to imply quite

6    directly that a baseless and wholly unjustified certification

7    plus is a potential basis.

8         MR. HASHMALL:  For exceptional circumstances but not

9    willful infringement.

10        THE COURT:  I guess I have trouble understanding what

11   is the difference.  In other words, if the basis for finding an

12   exceptional case were something like a baseless and wholly

13   unjustified certification plus bad faith, is there anything in

14   either Yamanouchi or Glaxo that says that can't be a basis for

15   a finding of exceptional case?

16        MR. HASHMALL:  There are two parts to the rationale of

17   the decision.  One is, I think, premised on the Supreme Court's

18   ruling in Eli Lilly that this is an artificial act and the

19   infringement is really a way of getting jurisdiction before the

20   court.  And the second part of the decision is reference to the

21   statutory language itself, and I think it is significant that

22   when the Federal Circuit cited section 271(e)(iv) in its

23   decision it put out in bold; it bolded that part of the

24   statute that says these are the only remedies available

25   again, I don't know what was the purpose of doing that, unless

23

Jackson

1    to make the point that there cannot be a finding of willful

2    infringement.

3        THE COURT:  I don't see that, because the part that

4    they emphasize says these are the only remedies except for an

5    award of attorneys' fees under section 285, and there is no

6    willfulness award of attorneys' fees except under 285, is

7    there?

8        MR. HASHMALL:  No, it is typically done under 284, as

9    your Honor pointed out.

10        THE COURT:  284 is a reason for enhanced damages, and

11    I think we are all in agreement that that's not in play in an

12    ANDA case.

13        MR. HASHMALL:  Right.

14        THE COURT:  But under 285 is where you get your

15    attorneys' fees, and willfulness is a subcategory of

16    exceptional case.

17        MR. HASHMALL:  That is where I disagree, with due

18    respect, your Honor.  First, there is no reference to

19    willfulness in 285.

20        THE COURT:  There is no reference to willfulness in

21    284 either.  Maybe you patent lawyers can tell me where I am

22    missing it in the statute but I haven't found the language.

23        MR. HASHMALL:  That is correct.  284 does not apply to

24    a Hatch-Waxman case in any event.  But if Glaxo stands for

25    anything, it is that you can't have willful infringement in an

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4ackeisa

1    ANDA. The only act of the infringement against the defendants

2    is the mere filing of ANDA certification. There is no other

3    alleged act of infringement.

4        I am not running away from the word "mere," your

5    Honor. That is the only act of infringement we are alleged to

6    have engaged in. In response to that, in their papers Eli

7    points to this notice letter that we sent out to them, and if I

8    could just spend a minute, the notice letter is not an act of

9    infringement and is not provided for in 271(e)(ii) but

10   separately provided for in 21 USC 355. If you read Eli's

11   papers they say they intend to show that that notice letter

12   was baseless and didn't adequately state the law, etc. et.

13   If all that is true, that if you read that notice letter your

14   Honor concludes it is a terrible notice letter, it is not an

15   act of infringement. It is merely sending a letter. The only

16   act alleged against the defendant is the mere filing of the

17   ANDA certification, and Glaxo, by reference to the statute and

18   in reliance on the Supreme Court's discussion of the

19   legislative history of the statute, says you can't on that

20   jurisdictional peg hang a finding of willful infringement.

21       THE COURT: Eli Lilly didn't say that.

22       MR. HASHMALL: They do talk about limited remedies and

23   Eli Lilly does talk about that this is a jurisdictional

24   conferring statute, it is an artificial act of infringement

25   simply to give the court jurisdiction to hear what is really a

25

Ackerba

declaratory judgment action.

THE COURT:  Right, but I think we have agreed, and

maybe I misheard what you said, that a totally frivolous ANDA

application could constitute an exceptional case.

MR. HASHMALL:  I would read that if coupled with

litigation misconduct seems to be the suggestion in Glaxo.  I

don't know that the issue has otherwise been resolved.

THE COURT:  I am not sure how you would escape

engaging in litigation misconduct if you filed a totally --

well, there is a way.  If you filed a totally frivolous,

utterly baseless and bad faith application, you are saying

there is no possibility of finding that an exceptional case

warranting an award of attorneys' fees to a prevailing

plaintiff who wins the resulting infringement lawsuit.

MR. HASHMALL:  I don't know the answer to that

question, your Honor.  I think the litigation conduct has to

play into the court's determination of that issue.

I have not yet discussed the whole issue that has been

the focus of Eisai's papers and the presentation of

Mr. Bechtold, how does all this affect discovery.

THE COURT:  Why don't you move on to it.

MR. HASHMALL:  I think we are entitled to the relief

we requested in the motion, which is the striking of the

paragraphs.  The next question is, of course, what is the

significance of that.  We did not make a discovery motion, nor

26

fackelea.

1    has filed, so I really don't think that the issue is before

2    your Honor at this point.  The parties have not come to a point

3    where we disagreed on any specific discovery request or had a

4    meet and confer on it.

5          THE COURT:  But Mr. Baechtold is going to run right

6    out and subpoena your CEO or somebody, whoever is in charge of

7    making these applications, and he is going to ask him why do

8    you think that we should have our patent declared invalid.  Is

9    that a legitimate question for him to ask?

10         MR. HASEMALL:  I think that the cases, the

11   overwhelming authorities that we researched and cite in our

12   briefs talk about exceptional circumstances as a collateral

13   proceeding after there is a determination of a prevailing

14   party.  It looks like in Yamanouchi that Judge Owen treated it

15   all at once, although it is not clear from the case that I read

16   whether there was any discovery on the issue.  It appears like

17   there was not.  I think under 54(d) the judge probably has some

18   discretion to hear it all at once.  I wouldn't dispute that.

19         But I think in this case it would be a terrible idea.

20   This is a complicated case.  There are a number of defendants.

21   We have foreign inventors we need to depose.  To start

22   conducting, and it would be mutual, discovery of each other's

23   executives about what you knew when you filed the certification

24   and what was the basis and asking Mr. Baechtold's clients what

25   they think they had a basis for suing my client for

Jackelsa

1    infringement, when were they aware of what we think are no

2    documents. It is going to become a complete — it is going to

3    swallow up the litigation of the merits.

4         Again, this was not, I think, an issue yet to be

5    presented to your Honor, but I think the best way to proceed in

6    this case is, let's have the trial, let's determine the

7    prevailing party, and then if either side wants to make an

8    application under 285 and Rule 54(d), it can be considered by

9    the court.

10        THE COURT:  Can I ask Mr. Baechtold a quick question

11   what came up in Mr. Hashmall's reply papers at the very end,

12   what might have seemed a throw-away for additional

13   consideration.  Do you agree that it is sauce for the goose and

14   that they can take whatever discovery might be relevant to the

15   theory, whatever theory they have of bad faith or exceptional

16   circumstance because they might turn out to be the prevailing

17   party?

18        MR. BAECHTOLD:  They can take whatever discovery they

19   are entitled to, and if we decide not to waive privilege and

20   not rely on advice of counsel, we won't rely on advice of

21   counsel.

22        THE COURT:  But they can query your nonlegal

23   executives as to what the basis was other than advice of

24   counsel.

25        MR. BAECHTOLD:  If there was anything other than

73

Jackeida

1    advice of counsel they can ask about it. It's an empty ball,

2    but they can ask about it.

3         THE COURT: All right, anything else?

4         MR. BAECHTOLD: If I may, I think your Honor put your

5    finger on it. Why do they care if at the end of the day we

6    have the same considerations for willfulness as for the

7    exceptional case, and I think the answer just came out. If you

8    leave willfulness in the case, Teva has to move to bifurcate,

9    otherwise they can't resist the discovery. So they are doing

10   an end run around. They are saying leave the exceptional case

11   in the case, we are just going to say nobody gets discovery on

12   it until you decide who is the prevailing party. That's the

13   real motivation for this.

14        Your Honor asked before, we talked about this

15   artificial act of infringement, and I think your Honor put your

16   finger on that. Until the Hatch-Waxman Act, we didn't need an

17   artificial act of infringement. When they did the testing to

18   get FDA approval, that was an act of infringement. That was a

19   trigger for litigation. So they made the testing for

20   regulatory purposes immune from a claim of infringement, but

21   they said we've got to litigate these things if there is a real

22   controversy, so we will put in this artificial act.

23        The end result is the same. We are here litigating a

24   case at considerable expense, and our position is that we

25   shouldn't be here. They shouldn't have made the certification

23

4sckeisa

1   that they made.

2        I think your Honor might ask, or Mr. Hashmall said why

3   would somebody make the certification, and the answer is, you

4   hope, when I get into discovery, maybe I will make some fixing

5   that will make the case for me.  Mr. Hashmall stands here today

6   and says we found all these hot documents.  That is the reason

7   people make baseless certifications, to get into the game, in

8   the hope that you turn something up.

9        THE COURT:  And you are saying that should be a

10  gamble, because if they do find something, then they win.  If

11  they don't, they should have to pay a penalty.

12       MR. BRECHTOLD:  Exactly.  It is a no-lose proposition.

13  If Glaxo really says that a generic can never be guilty of

14  infringement, they have a free shot at it.  If they find

15  something, they win.  If they don't, they still don't have to

16  pay.

17       On this willful infringement, there is a distinction

18  on what is objectively baseless and what parties believe.  By

19  definition, to be a willful infringer you have lost the case.

20  You can't be an infringer unless you lost the case.  That

21  means, whatever your reasoning at the beginning it was wrong.

22  However, you are not willful if you believed it was right, but

23  you are willful if you didn't believe it was right.  In

24  Yamanouchi, there is no finding that Danbury didn't believe in

25  the merits of its case, as objectively baseless as it was.  We

30

Jackelsa

1  want the opportunity to show that these people, after reading

2  the Yamanouchi decision, had to know that their case was

3  baseless and they went ahead and filed it anyway.

4      MR. HASHMALL:  Your Honor, one, we did plead

5  inequitable conduct in the answer before filing the case before

6  the production of documents.  It is a very detailed pleading,

7  the allegation of inequitable conduct.  Two, on the issue of

8  willful infringement, aside and apart from the issue that we

9  don't think it is part of the case properly, there is a taint

10 associated with being declared a willful infringer.  It is a

11 public company.  It is in the business of marketing

12 pharmaceuticals and selling generics around the world.  The

13 simple finding of infringement is viewed by my client as a

14 taint, in a sense as a scarlet letter, and therefore it is

15 important to Teva that that declaration, if it is not

16 permissible under the law, that it is not one of the available

17 remedies, not be one of the declarations issued by this court

18 at the conclusion of the hearing.

19     THE COURT:  Let me just try and follow this piece up.

20 In the ordinary kind of infringement case, the question of

21 willfulness is put to the jury.  The jury returns a verdict,

22 and let's say it returns a verdict and checks the box yes for

23 willful infringer.  At that point it then becomes a

24 discretionary issue for the court, as to whether there is going

25 to be enhanced damages or attorneys' fees, and let's say the

31

tickelsa

1    court decides no.  I guess I will ask both sides, does the

2    judgment read anything more than judgment for plaintiff in the

3    amount of X dollars, having been found to infringe the patent?

4    Isn't that all that happens?

5        MR. BAECHTOLD:  Of course if the court decides it,

6    there will be a written decision, and the written decision will

7    say even though the infringement was willful I am not going to

8    award it.

9        But Teva is in the business of making patent

10   challenges.  Recently it was published that they have at least

11   50 cases where they have challenged patents and they have been

12   sued.  They are not going to be tainted unless there is a

13   finding that they were willful infringers.  So if anything,

14   they should want the issue in the case so that they can be

15   exonerated for their exemplary conduct.

16       THE COURT:  I am sure they would.

17       Well, all right, this is very interesting and

18   enlightening.  It does seem to me to be an exercise in how many

19   angels can dance on the head of a pin.  I find myself

20   reasonably clear about many of the legal points and still

21   somewhat in doubt as to whether the bottom line is to grant the

22   motion or deny it, because I think that the actual relief asked

23   by the motion is quite narrow and doesn't really have all the

24   implications that are raised by each side.

25       The motion appears to me, notwithstanding the legal

Mackelsa

1    theories that it is based on, to seek no more relief than

2    effectively the striking of paragraph 22(b) of the complaint.

3    That is, defendants say that they are entitled to a judgment on

4    the pleadings, that plaintiff cannot be entitled to what that

5    paragraph seeks, which is that a judgment be entered that

6    defendants' infringement of the patent in question was and is

7    willful, and plaintiffs are entitled to their reasonable

8    attorneys' fees.

9         So the extent that defendants seek to strike the

10   demand for attorneys' fees, the motion is clearly denied

11   because section 271(e)(iv) specifically provides that in this

12   kind of action the plaintiff can be entitled to an award of

13   attorneys' fees.

14        To the extent that that paragraph seeks a judgment

15   that infringement was willful, I don't know that there is any

16   authority in any patent case, though I need not go so far for

17   the court entering such a declaratory judgment. Clearly under

18   section 271(e)(iv), there are very specific forms of relief

19   provided, and none of them includes a declaration of

20   willfulness.

21        So, so far as the dual motion is concerned, it seems

22   to me that the not very satisfying, not very powerful

23   conclusion is that the motion is granted with respect to the

24   words "that defendants' infringement of the '552 patent was and

25   is willful" but it is denied insofar as it seeks a judgment on

13

packelen

1    the pleadings that plaintiffs are not entitled to the relief;

2    judgment be entered that plaintiffs are entitled to their

3    reasonable attorneys' fees pursuant to 35 U.S. Code section

4    285; and that seems to me to be a rather straightforward

5    conclusion that doesn't actually get either side what it seems

6    to be aiming at.

7         So I will go a little further, to the extent it gives

8    the parties any guidance on how this litigation is to be

9    conducted.  First, there is a significant dispute between the

10   parties about the interpretation of the Federal Circuit's

11   holding in Glaxo Group Ltd. v. Apotecs Incorporated, 376 F.3d

12   1399.  It is a 2004 case.  It is so recent that rehearing was

13   denied just a month ago.  In that case, I think the defendants

14   have a good point that it is hard to read this opinion without

15   getting a sense that what the Second Circuit may have thought

16   it was doing, at least some parts of the opinion, was

17   suggesting that there simply can be no finding of willful

18   infringement in what the parties refer to as an ANDA case, a

19   case where the only act of infringement alleged is the filing

20   of a new drug application which is made an infringement by 35

21   USC 271(e)(ii).

22        At the same time, there are two troubling facts about

23   that reading of the case.  The first is, the court doesn't

24   actually say that in so many words, though some of its

25   reasoning suggests that that's what it thinks.  What it says

34

Sackeisa

1   is. the mere fact of filing an application or certification

2   cannot support a filing of willful infringement." At the same

3   time, the court also distinguished its prior decision in

4   Yamanouchi v. Danbury, 231 F.3d, 1339. Federal Cert 2000. It

5   distinguishes Yamanouchi by saying that in that case, the court

6   determined that a baseless and unjustified certification, when

7   combined with litigation misconduct, warranted an exceptional

8   case finding, the finding of exceptional case being

9   prerequisite to an award of attorneys' fees under section 185.

10        That is mystifying to me. The court does not say that

11  a finding of litigation misconduct is what warrants an

12  exceptional case finding and that the conclusion of the

13  district court in Yamanouchi that the certification was

14  baseless and wholly unjustified was totally relevant to the

15  finding of exceptional case. It seems to think that something

16  about a paragraph for certification can be a part of a finding

17  of exceptional case. So what exactly the court means is not as

18  clear as defendants seem to think.

19        Secondly, it is very hard for me to believe that the

20  court could mean that a totally baseless and unjustified

21  certification made in bad faith can never be the basis for a

22  finding of exceptional case. Indeed, I think it was hard for

23  Mr. Hashmall to answer questions on that because I think it was

24  hard for him to reach a conclusion that such a bad faith filing

25  could be disregarded by a court in making inquiry to an

jackelsa

1    exceptional case.  I don't know exactly what is the difference

2    between willfulness and bad faith in this setting.  I grant

3    that Congress obviously intended that there be litigation when

4    it passed the Hatch-Waxman Act.  It is an act that says let

5    there be litigation, and there was litigation.  In that sense

6    the infringement here is artificial, in the sense that it is a

7    trigger for the litigation.  At the same time, frivolous

8    triggers for litigation and frivolous litigation are classic

9    issues in which courts have often recognized that attorneys'

10   fees are to be awarded, and it is hard for me to think that a

11   party who abuses the privilege set forth in the act could be

12   exempt from a finding of exceptional case and award of

13   attorneys' fees, if that is what follows.

14        Whether that is called willfulness or is called

15   something else, it does seem intrinsically to involve an

16   inquiry into the subjective as well as objective.  If

17   uncertified action can warrant an exceptional case finding

18   then it seems to me all the more clear that a subjectively

19   baseless and unjustified certification or application, at least

20   when combined about with other factors, warrants an exceptional

21   case finding.

22        That brings us to the scope of discovery issue, and

23   here I am just giving guidance.  I suppose we may well see some

24   fight when this issue ripens, and maybe it never will ripen,

25   but it does seem to me that it behooves me to give some

4ackelsa

1    guidance on this front.  I am sure that Mr. Bashwell is correct

2    that in the ordinary course an application for attorneys' fees

3    certainly does not arise until after one party has won or lost.

4    On the other hand, it does not seem to me to make a great deal

5    of sense to have a litigation, have one party win and then

6    conduct what can be a months long discovery process into

7    various people's subjective state of mind.  I don't think that

8    it swamps the discovery process to acknowledge that issues

9    relating to the state of mind of those who took all the actions

10   that were taken here that might give rise to an exceptional

11   case finding be the subject of discovery.  I think that is a

12   more efficient way to proceed, even though it means both sides

13   may have some inquires to make, rather than to wait and then

14   conduct an entirely separate inquiry into one side's

15   motivations, which would mean bringing people back not just for

16   the deposition they are having anyway but for entirely

17   different discovery.  So I don't think anything should preclude

18   either side from making inquiries that might ultimately be

19   relevant on the grounds that this is a truly exceptional case

20   because one side or the other engaged in some conduct or one

21   side or the other made claims in bad faith in the course of the

22   litigation.  I think it has been made clear on both sides that

23   such inquiries don't justify the invasion of the

24   attorney-client privilege until or unless one side waives the

25   privilege by asserting that advice of counsel is something that

37

Jackeisa

1  is relevant to prove their good faith.  So I suppose it is open

2  to either side to say in response to a question of the ilk that

3  we have been talking about, witness, the reason why I did that

4  has to do with advice of counsel and I can't say anything more

5  about it, and that might be the end of it, and there are no

6  other inquiries that were made to turn over to the lawyers and

7  get advice on whether they should make these filings or no.

8  If that is what people say, all of this becomes not very much

9  of a distraction and very much a waste of everyone's time.

10        But I think that is the ruling on the motion, and at

11  least my not particularly learned thoughts on what may turn out

12  to be a rather abstruse question of whether willfulness is a

13  category or not a category for a finding of exceptional case.

14  It obviously leaves open any question of whether the

15  willfulness inquiry will ever be put to a jury, and if they

16  ever get there I will have to make up my mind about that.  But

17  I will say that it seems much less natural to ask a question

18  whether there was willful infringement about a case of this

19  kind where there has to be a rather artificial definition of

20  what it would mean to willfully infringe.  It is pretty

21  straightforward.  Someone is manufacturing a product that it

22  thinks has a patent and asks the jury, and yes, the product

23  does incorporate, did the defendant do what it says willfully?

24  Meaning, did it know that there was a patent and did it have

25  any good faith basis for thinking it was on solid ground.  It

88

4ackeisa

1    is a little odder in a case like this, where the issue of was

2    there an infringement is simply did they file an application,

3    and there is automatically an infringement once it is

4    determined that the patent is valid.

5          So the question of was it willful seems a more

6    confusing question to ask a jury, and if what we are really

7    do -- the attorneys' fee inquiry is for the court anyway. If

8    we are going to put that to the jury it may be because somebody

9    persuades me that is actually required, to put a willfulness

10   question to a jury.

11         That is getting way ahead of us. I say that only

12   because we did have some discussion of it today. If we even

13   get there, the parties will no doubt brief it and maybe they

14   will manage to show me my ignorance yet again.

15         Is there anything we need to do today?

16         MR. WEINSTEIN: Yes, your Honor. This is Lou

17   Weinstein for Reddy.

18         We have a scheduling issue. We have raised a number

19   of disputes with Eisai, discovery disputes and privilege

20   disputes and advice of counsel disputes. We have asked for a

21   meet and confer. Last week you wrote a letter asking me to ask

22   them to set a date to confer. We are having trouble setting a

23   date. We are asking the court to help is, since we are all

24   here, to set up a date for a meet and confer.

25         THE COURT: I am not everybody's secretary. I take a

85

tackelsa

1    calendar and take a dart and shoot the dart at the calendar,

2    and that's the date.  It is not a very good way of taking a

3    date because it may be very inconvenient for all the lawyers

4    involvement involved.  So I reasonably assume that the lawyers

5    can work out a date within a reasonable time on their own

6    without my having to resort to such expedience.  I am not going

7    to sit here and ask people to block out dates and serve as a

8    scheduling assistant to somebody.

9         You are going to respond to this?

10        MR. O'MALLEY:  Yes, your Honor.  Joe O'Malley.

11        THE COURT:  There can't be a good problem with respect

12   to timing.

13        MR. O'MALLEY:  You are right, your Honor.  First, the

14   claim came late last week, on the eve of a fundamental problem.

15   However, there is a missing link.  Mr. Weinstein assumes there

16   will be a dispute that we have to trouble the court with.  We

17   raised several issues.  We wrote back, and took the time to

18   respond substantively.  We want to hear Mr. Weinstein's

19   response to our very specific issues that we have raised, and

20   then we will know is there a dispute that we want to trouble

21   the court with.

22        Just by way of example, Mr. Weinstein has said many of

23   your claims of privilege are unfounded in the privilege log,

24   let's set a meet and confer so we know what is inevitable.  We

25   want to know his challenge to our privilege, and perhaps one

40

4ackeisa

1    is necessary.  Perhaps Mr. Weinstein identifies some documents

2    that we inadvertently withheld that we can just give to him.

3    Our position is that we have a letter written, we will get it

4    to Mr. Weinstein today.  We want to further define the issues

5    so we don't trouble the court unnecessarily and have a meet and

6    confer very promptly after that.

7        THE COURT:  Let me give my take on that.  What you

8    describe, Mr. O'Malley, is reasonable and to some extent I

9    think it is a confer, not a meet.  It is within the spirit of

10   the rules that the parties change views before troubling the

11   court.  That's the point of a meet and confer.  On the other

12   hand, it isn't the point that everybody has to do everything in

13   writing and take a lot of time.  I don't know that

14   Mr. Weinstein has to be under the burden of engaging in a lot

15   of written briefing in order to get his point across.  It is

16   obviously a judgment call, how far one goes with this written

17   back and forth before it becomes apparent that one side is

18   stalling or that the parties have intractable disagreement,

19   and I don't know why one party should be precluded from

20   presenting an issue to a court when it thinks the issue is

21   ripe.  This puts a certain premium in my book on lawyers being

22   reasonable with each other and being reasonable with and fair

23   to the court.  I am not particularly happy when parties invoke

24   a discovery dispute, or bring a discovery dispute to the court,

25   and at the end of the day, after spending an hour or two hours

4ackelea

41

1    in court thrashing things out, it turns out that really
2    everybody is in agreement, or at least once there is an adult
3    in the room everyone has to admit there is no reasonable basis
4    for not being in agreement.  The court has spent a lot of time
5    accomplishing what the parties could have accomplished
6    themselves.  On the other hand, neither am I very happy if the
7    discovery dispute turns into one in which there is a genuine
8    dispute, and one party has been jerking the other party around
9    for weeks by engaging in shadow boxing that is expensive and
10   makes all the lawyers happy and all the clients unhappy and
11   doesn't really advance the ball.

12          I don't know which description this falls under, but
13   let's be clear how this thing is going to be conducted.  If
14   Mr. Weinstein, you have put something to these folks right
15   before what at least in the courthouse is treated as a
16   three-day weekend, OK, they've got a fair opportunity to
17   respond to you.  That doesn't necessarily mean that you have to
18   engage in endless -- if all they are saying is write me a
19   brief, I will think that is a very fair response on their part.
20   But if they are still about to give you a substantive response
21   objecting to what your position is, maybe at that point we do
22   have a ripe issue today.  Talk to each other.  There are such
23   things as telephones.  I encourage informal communication.
24   Figure out what your disagreement is, and if you have a
25   disagreement, bring it to the court and bring it quickly.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

42

jackeisa

1        I will say no more about that. You don't need a date

2   to bring something before the court. The procedure is simple.

3   You lay out each side's position. Mr. O'Malley has written a

4   letter, he says. You submit yours, and then we are off to the

5   races for a ruling.

6        MR. WEINSTEIN:  The issues haven't teed up for week.

7   My letter of Wednesday of last week was just enough to set up a

8   meet and confer.

9        THE COURT:  You pick up the phone, I am here to meet

10  and confer. Then you put it, and if you can't reach some

11  agreement that he is going to turn over item 62F, 42B and

12  nothing else, as to the nothing else, come to court. I will be

13  happy to hear you pretty much at a moment's notice.

14       Anything else?

15       MR. TULCHIN:  Just a point of information, your Honor.

16  At the end of the court's ruling on the potentiality of putting

17  willfulness to a jury in this case, I wanted to remind the

18  court that there is no jury here.

19       THE COURT:  Well, good.

20       MR. TULCHIN:  We stipulate that this is a bench trial.

21       THE COURT:  Then all the easier, because then it would

22  be incredibly easy for me to finesse the issue of willfulness,

23  if I think it is an exceptional case and there is no danger

24  that Glaxo will rear its head. If I don't, then I think it is

25  the appropriate case for award of attorneys' fees and, two, I

43

4ackeija

1    think it is not that hard to moot the question of willfulness.

2    So we will see where we wind up, but yes, if that's not even an

3    issue, that I don't see many problems are going to rear their

4    heads on this front from here on in.

5        Thank you very much.

6        (Proceedings adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 9

Westlaw.

Not Reported in F.Supp.                                              Page 1
Not Reported in F.Supp., 1991 WL 16494 (D.N.J.), 17 U.S.P.Q.2d 1149
(Cite as: Not Reported in F.Supp.)

**C**

Briefs and Other Related Documents

United States District Court, D. New Jersey.
Donna Mae MELLON, Plaintiff,
v.
BEECHAM GROUP PLC, et al., Defendants.
Civ. No. 86-2179(HAR).

Jan. 3, 1990.

Goldstein, Till, Lite & Reiken by Allyn Lite, and
Kenyon & Kenyon by Thomas Creel, for plaintiff.
Hopgood, Calimafde, Kalil, Blaustein & Judlowe by
Paul H. Blaustein, Jesse Reingold, and Eve Kunen,
for defendant Beecham.

OPINION

ACKERMAN, District Judge.

*1 THE COURT: May I have the appearances,
please.

MR. CREEL: For Mellon, Thomas Creel.

MR. LITE: Allyn Lite for the plaintiff.

MR. BLAUSTEIN: For Beecham, Paul Blaustein.

MR. REINGOLD: Jesse Reingold.

THE COURT: I've had the pleasure of meeting you
before, Mr. Blaustein.

MR. REINGOLD: Jesse Reingold.

THE COURT: I've had the pleasure of meeting you
as well.

MS. KUNEN: Eve Kunen.

THE COURT: My pleasure also.

Now, we have two appeals from Magistrate Chesler.
Each side is unhappy.

I've read all the papers. I'm ready to decide the
matter.

Is there anything you haven't said in the papers in this
very voluminous case which has been going on and

on and on that you wish to tell me now?

MR. BLAUSTEIN: Your Honor, we've said in our
papers our position.

THE COURT: I know you have. I've read them.

MR. BLAUSTEIN: I'm not going-I have nothing
else to add, unless you have any questions.

THE COURT: I don't.

Mr. Creel?

MR. CREEL: Your Honor, I have, as Mr. Blaustein
does on this. I do call your attention to one case that
was cited in our reply brief on the bifurcation
question.

THE COURT: The Brad Regan case?

MR. CREEL: The Sherry case, that indicates that the
question of wilful infringement is tried to the jury,
not to the judge.

THE COURT: Thank you.

This is an appeal of Magistrate Chesler's order, dated
September 29, 1989.

The order concerned two matters: Plaintiff Mellon's
motion to compel defendants Beecham Group P.L.C.
and Beecham, Inc. (Beecham) to produce certain
privileged documents and defendants' motion to
bifurcate the liability and damages phases of
discovery and trial. The order in question granted
both motions (the motion to compel the production of
documents only in part) and each side herein appeals.

In this suit, plaintiff Mellon asserts that defendants
Beecham Group P.L.C. and Beecham, Inc. have
infringed a patent belonging to her late husband; this
patent is known as the Lewellen invention and
concerns a method for suspending two high-yield
gels of similar rheological properties in a single
medium. The plaintiff asserts that the defendants'
product known as Aqua-Fresh infringes upon the
Lewellen patent.

In response to plaintiff's claims of patent
infringement, the defendant has asserted that the

Not Reported in F.Supp.    Page 2
Not Reported in F.Supp., 1991 WL 16494 (D.N.J.), 17 U.S.P.Q.2d 1149
(Cite as: Not Reported in F.Supp.)

plaintiff's patent is invalid based upon prior art, as well as the affirmative defenses of laches and estoppel.

The order being disputed today reads as follows:

1. Discovery and trial shall be bifurcated as follows:

"First, only the liability issues, i.e., validity, infringement, laches and enforceability shall be discovered and tried;

"Second, in the event plaintiff is successful in establishing liability, the damage issues shall be discovered and tried.    B.    The issue of wilful infringement shall be decided following the trial on liability, as part of the damages trial.  2.A.  Plaintiff's request for production of defendants' withheld documents is granted for all documents which are dated prior to March 7, 1984 and;

*2 "1. which are communications from counsel and patent agents to either defendant and are communications from either defendant to counsel or patent agents and which mention William B. Lewellen, his widow, his patent or patent applications and/or samples sent by Mr. Lewellen to Beecham; or

"2. which are documents that reflect or memorialize discussions or communications between either defendant and their counsel or patent agents relating to William Lewellen, his widow, his patent or patent applications and/or samples sent by Mr. Lewellen to Beecham;

"3. which are internal documents of either defendant, including documents generated by inside counsel of either defendant, including to William Lewellen, his widow, his patent or patent applications and/or samples sent by Mr. Lewellen to Beecham.

"B. Plaintiff's motion is denied.    As to all other documents identified in plaintiff's motion to compel is denied covered by the attorney-client privilege."

The plaintiff argues that in asserting the defenses of laches and estoppel, the defendant has waived any possible privilege concerning documents that would tend to show what exactly the defendant was relying on in making their determination that Aqua-Fresh did not infringe upon the Lewellen invention.

Thus, documents that relate to, e.g., the advice of counsel concerning the legality of patenting and marketing Aqua-Fresh without first obtaining the

rights to the Lewellen patent would tend to disprove defendants' claim that they relied on plaintiff's inactivity:  The showing which is necessary for the defense of laches.

In turn, defendants argue that they relied on "objective facts"; hence, the test of estoppel can be determined without reference to defendants' "subjective beliefs" based upon the opinions of counsel.

The defendant asserts that it relied upon the advice of counsel concerning the patentability of its own product, (see Beecham's responses to Interrogatories 19 and 20), and that, therefore, this material, if discoverable at all, is only discoverable during the damages phase of the trial insofar as it speaks to the question of wilful infringement.

The parties have characterized the dispute here as centering on the two different views of the applicable law expressed in *Southwire Co. v. Essex Group, Inc.*, 570 F.Supp. 643 (N.D.Ill.1983) and *A.C. Aukerman Co. v. Miller Formless Co., Inc.*, 693 F.2d 687 (7th Cir.1982).

Different, who has asserted that there is a conflict between these two cases, urges this Court to follow *Aukerman.*  Plaintiff has suggested that the two cases do not conflict as much as they rely upon different factual predicates.  The parties' own research as well as that of this Court reveals that these two cases are the only two cases directly on point.  A brief review, however, of the nature of the attorney-client privilege is in order.

The attorney-client privilege imports that a confidential communication between attorney and client will be kept confidential when its discovery is sought.    This privilege "foster[s] disclosure and communication between the attorney and client." *United States v. Fisher,* 692 F.Supp. 488, 490 (E.D.Pa.1988) (quoting *In re Grand Jury Investigation,* 599 F.2d 1224, 1235 (3d Cir.1979)), appeal dism'd, 871 F.2d 444 (3d Cir.1989).

*3 The burden of proving that the privilege exists is on the party asserting the privilege, see, e.g., *In re Bevill, Bressler & Schulman Asset Management Corp.,* 805 F.2d 120, 126 (3d Cir.1986); *United States v. Martin,* 773 F.2d 579, 584 (4th Cir.1985), because the privilege "stand[s] in derogation of the search for truth and must therefore be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.' "  *See*

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 16494 (D.N.J.), 17 U.S.P.Q.2d 1149
(Cite as: Not Reported in F.Supp.)

Page 3

*Fisher*, 692 F.Supp. at 490 and cites therein.

If the communication is disclosed to third parties, then the protection which the privilege provides vanishes. *E.g., Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 156 (D.Del.1977) ("The privilege or immunity has been found to be waived only if the facts relevant to a particular, narrow subject matter have been disclosed in circumstances in which it would be unfair to deny the other part an opportunity to discover other relevant facts with respect to that subject matter").

Clients waive the attorney-client privilege by deliberately injecting into the litigation the advice which the clients received from counsel. *See Smith v. Alyeska Pipeline Serv.*, 538 F.Supp. 977, 979 (D.Del.1982), *aff'd mem.*, 758 F.2d 668 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1066 (1985).

Similarly, the "advice of counsel" exception to the privilege states that where a party asserts as an essential element of their defense that it relied upon the advice of counsel, that party waives the privilege regarding communications pertaining to that advice. *See, e.g., Painter v. Marshall Field & Co.*, 80 F.R.D. 718, 721 (N.D.Ill.1978).

Under Federal Rule of Civil Procedure 26(b)(1), to be discoverable information must be "relevant to the subject matter involved in the pending application." Moreover, the information sought must pass the threshold of relevancy by relating to an issue that the party seeking the privilege has raised. *See Barr Marine Products Co., Inc. v. Borg-Warner Corp.*, 84 F.R.D. 631 (E.D.Pa.1979).

The crux of the disagreement between the two cases relevant here is whether or not the defenses of laches and estoppel require an inquiry into defendants' state of mind or behavioral predicates.

To prove estoppel, defendants must show four elements: (1) that plaintiff unreasonably and inexcusably delayed enforcement of its rights; (2) that the delay prejudiced the defendant; (3) that the plaintiff's affirmative conduct induced the belief that plaintiff had abandoned its claims against defendants; and (4) that defendants relied on plaintiff's actions to their detriment. *See, e.g., Continental Coatings Corp. v. Metco, Inc.*, 464 F.2d (7th Cir.1972); *Aukerman, supra*.

The first two elements, i.e., the plaintiff's delay in enforcing his rights and the defendants' consequential

prejudice is a sufficient showing for the defense of laches. The *Southwire* court reasoned that by asserting laches and estoppel, the defendant implicitly asserts that defendant was not relying upon the advice of counsel. Moreover, this somewhat narrow holding supports the conclusion that a defendants' state of mind is discoverable whenever that state of mind is inserted by the defendant into the litigation.

*4 The defendants argue that to follow *Southwire* is erroneous, and that this Court should find that Magistrate Chesler erred in following the *Southwire* precedent, as opposed to that of *Auckerman*. Defendant's further argue that Magistrate Chesler's presumption, per *Southwire*, that either defendant relied upon the advice of counsel or it relied upon the plaintiff's delay is implausible.

In reality, defendants argue a cautious and prudent client will seek both the advice of counsel and wait "until a substantial period of time passes" before engaging in the allegedly infringing activity. Thus, defendants argue that their laches defense does not *a fortiori* preclude reliance on counsel. Defendants further allege that if the logic of the *Southwire* Court were followed, no manufacturer could ever raise an estoppel defense without first disclosing counsel's opinions.

### The Standard Of Review

This Court has appellate over a magistrate's nondispositive order pursuant to ?? U.S.C. Section 636(b)(1)(A), Federal Rule of Civil Procedure 72(a) and Rule 40(a) of the local rules of the United States District Court for the District of New Jersey.

Under Third Circuit law, I can set aside a magistrate's decision under Section 636(b)(1)(A) only if it is found to be "clearly erroneous or contrary to law." *Cippolone v. Liggett and Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir.1986)

The United States Supreme Court has stated "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Bearing that standard in mind, let me now turn to Magistrate Chesler's order.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 4
Not Reported in F.Supp., 1991 WL 16494 (D.N.J.), 17 U.S.P.Q.2d 1149
(Cite as: Not Reported in F.Supp.)

In deciding to compel the defendants to produce those documents which related to the Lewellen patent, Magistrate Chesler found that, "The basic analysis of whether or not the attorney-client privilege has been waived is whether or not you're trying to use the privilege as a shield or as a sword.... When you assert estoppel, you cannot assert that as a defense with one hand and then with the other hand say ... you can't explore our subjective intent.... You're not permitted to do that because you put the subjective intent affirmatively in issue, and you will not be permitted to pick and choose your proofs." Transcript at Page 8.

Moreover, Magistrate Chesler found that, "[b]y asserting estoppel and laches as a defense to liability and also asserting reasonable reliance on the advice of counsel to the wilful infringement claim ... (the defendants have set up) defenses which raise a sufficient hint of inconsistency to warrant permitting plaintiff to fully explore (defendants') defenses." Transcript at Page 14.

In determining that *Southwire* established the parameters under which discovery of this material may be ordered, the Magistrate held that, "*Southwire* does not just deal with wilful infringement. It says the estoppel defense also ends up constituting a waiver in part. It holds that there is a full waiver under the facts of this case where you set up inconsistent defenses.... The law is that where you affirmatively inject an issue into the suit in such a manner that those communications then become indeed the most relevant evidence on the issue, but then seek to preclude discovery of it, you're using the privilege as a sword rather than a shield." Transcript at Pages 16 and 19.

*5 As the defendants' reply brief indicates, the narrow question currently before the Court is whether this Court should follow *Southwire* or *Aukerman*, given the absence of applicable Third Circuit or Federal Circuit law. The parties agree, and it is indeed indisputable that if Magistrate Chesler correctly apprehended the state of the law, the facts in this case warrant the result reached in the proceedings below.

Let me begin by noting that the *Southwire* Court did not perceive *Aukerman* to stand in firm opposition to the proposition that a subjective inquiry into the defendant's state of mind is justified in certain circumstances. In this regard, the *Southwire* Court noted the following passage in *Aukerman*, "This case

can and should be decided on the existing record which excluded defendant's internal thinking, even if we assume that in some other litigation the internal position of the accused infringer might be relevant and discoverable." *Southwire*, at 648 citing *Aukerman* at 702.

In *Aukerman*, the plaintiff brought suit against another alleged infringer. While that suit was pending, the plaintiff conducted license negotiations with the defendant at issue. Moreover, the patentee had given notice that infringement had occurred, threatened enforcement and "proceeded with an extended period of nonenforcement." *Aukerman* at 701.

Given the totality of the circumstances, the Court felt that plaintiff's affirmative conduct was such that an alleged infringer could reasonably infer that the claim against it had been abandoned. *Id.*

Finally, the district court denied the plaintiff's motion to compel the production of the attorney-client documents because this, "belated motion came nine months after defendant asserted its claims of privilege and four months after defendant's motion for summary judgment had been filed and after briefs had been submitted on that motion." *Id.* at 702.

I think it also worth noting that this Appellate Court was determining whether or not lower court had abused its discretion in denying the discovery requested; thus the Court was obligated to give the district court all of the appropriate difference due to a trial court making a discretionary determination.

*Aukerman* deals with a unique set of factual circumstances, distinguishable from those before this Court, or the *Southwire* Court. Here, like *Southwire* and unlike *Aukerman*, the defendant has asserted that it relied upon the advice of counsel in making its defense to a claim of wilful infringements.

As Magistrate Chesler correctly points out, the inconsistency between the two defenses entitles the plaintiff to limited discovery on the advice of counsel, otherwise the defendant would be using the privilege as a sword rather than a shield. As the *Southwire* court noted in support of its decision to order production, "Here, in contrast to *Aukerman*, the record does contain some support for *Southwire's* contention that Essex relied on its patent attorneys and not *Southwire's* inaction." *Southwire*, at Page 648.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                     Page 5
Not Reported in F.Supp., 1991 WL 16494 (D.N.J.), 17 U.S.P.Q.2d 1149
(Cite as: Not Reported in F.Supp.)

*6 The *Southwire* Court noted, "If *Southwire* has evidence that Essex actually relied on something other than *Southwire's* actions or silence, that serves to undercut the inference that Essex seeks to have drawn from its "objective evidence." *Id.*.

The *Southwire* court correctly perceived that estoppel in general has been construed so as to include questions concerning the defendant's state of mind. *See*, in this regard, *Naxon Telesign Corp. v. Bunker Ramo Corp.*, 686 F.2d 1258 (7th Cir.1982), in which the court referred to the following definition of estoppel, derived from the United States Supreme Court in *Dickerson v. Colgrove*, 100 U.S. 578, 580 (1879): "He who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." *Naxon*, at 1263, n. 8. *See also, Minnesota Mining and Mfg. Co. v. Berwick Industries, Inc.*, 373 F.Supp. 851, 869 (D.N.J.1973).

The dual showing in *Southwire*, i.e., that the defendant raised the estoppel defense and that the defendant used its patent counsel's opinions to prove reliance upon those opinions in connection with another issue in the case, applies with equal force here. Moreover, this Court agrees with the plaintiff and the *Southwire* Court in holding that *Aukerman* does not truly stand for the proposition that a defendant's state of mind is never an issue in the context of an estoppel defense.

The defendant here has deliberately injected its state of mind into the litigation by asserting that it relied upon the advice of counsel. Under the applicable law governing waiver of privilege, I find that the defendant has, by its own litigation and prelitigation behavior, waived any possible privilege concerning advice of counsel referring to the Lewellen patent.

Based on the foregoing, I find that Magistrate Chesler correctly formulated the applicable law, and hereby affirm his order compelling the production of certain privileged documents.

Let me now turn to the Magistrate's order concerning the bifurcation of the damages and liability phases of trial and discovery, which plaintiff Melon is appealing.

In urging that this Court overturn the Magistrate's order. The plaintiff alleges that there are new facts before this Court which the Magistrate did not consider. Specifically, plaintiff's counsel agreed to defer deposing trial counsel, so as to avoid the issues of possible disqualification of trial counsel. The plaintiff suggests that discovery should therefore proceed with the caveat noted above, even if the actual trial is bifurcated.

The other "new" factor is the representation by plaintiff's counsel that the plaintiff had sought to settle the litigation, only to discover that the parties had radically different views. The plaintiff urges that at the least, discovery on damages will facilitate settlement since treble damages are allowable upon a showing of wilful infringement.

*7 In support of their motion for a bifurcated trial and for a stay on discovery pending the completion of the original trial, the defendants advanced several arguments:

First, the issues in this case are complex and severance will aid the jury and result in substantial savings in both economy and time for the Court and the parties; second, the issue of damages is necessarily complex and time consuming; and third, it is typical for patent cases to proceed in a severed fashion.

The defendants further averred that bifurcation will not violate the defendants' right to a trial by jury. In response, the plaintiff suggests that the prejudice to her cause will be manifest, due to the advanced age of some of the witnesses as well as the fact they are located in England and that the plaintiff will, therefore, incur additional, needless expense were discovery to be bifurcated.

The plaintiff suggests that the parties in this litigation already engaged in considerable wrangling over whether or not discovery should proceed in a given deposition and that Magistrate Chesler's decision will aggravate this situation.

The plaintiff expressed concern that bifurcation will entail further confusion over specific deposition questions or document requests. The plaintiff also maintains that there is nothing inherently complex about damages in this case, that in fact any discovery concerning damages will cover the same witnesses deposed during the liability phase and that Beecham's sales and profit data are relevant both to a determination of validity and of wilful infringement.

Finally, the plaintiff argues that the defendant has the burden of proof and that the defendant has not put forth specific reasons justifying bifurcation. As

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                   Page 6
Not Reported in F.Supp., 1991 WL 16494 (D.N.J.), 17 U.S.P.Q.2d 1149
(Cite as: Not Reported in F.Supp.)

noted before, under 28 U.S.C. Section 636(b)(1)(A), I may reconsider the Magistrate's orders if they are "clearly erroneous or contrary to law." Decisions on discovery matters are left to the sound discretion of the judge. *See* 8 Wright & Miller, *Civil Practice and Procedure*, Section 2040.

Accordingly, only if the Magistrate's orders constituted an abuse of discretion, may I reconsider them. I may not substitute my judgment for that of the Magistrate because the test is not whether I would have ruled the same way in the first instance. Nonetheless, I must examine the basis of the Magistrate's exercise of discretion.

The Third Circuit has noted in an analogous context that there is the equivalent of an abuse of discretion "if the trial court has not held the defendants to their proper burden or has clearly erred in weighing the factors to be considered." *See Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 160 (3d Cir.1980), *rev'd on other grounds*, 70 L.Ed.2d 419 (1982) (forum non conveniens discretionary determination).

Similarly, Judge Wisdom, in his dissent in *In re Unterweser Reederei, GMBH*, 428 F.2d 888 (5th Cir.1970), *rev'd sub nom.*, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) commented "It is truism that we do not observe an exercise of discretion that was misled by an erroneous view of the law." 428 F.2d at 907.

*8 I also should add, as I stated earlier and I want to repeat, from the *Gypsum* case, *supra*, that a finding is clearly erroneous, although there is evidence to support it, the reviewing court, to the entire evidence, is left with the definite and firm conviction that a mistake has been committed.

I believe that the Magistrate erred in making the decision that he did, in making a mistake. I first note that Rule 42(b) of the Federal Rules of Civil Procedure specifically provides the district court with discretion to separate issues for trial in furtherance of convenience, or to avoid prejudice, or when separate trials will be conducive to expedition or economy.

It should be noted, at the outset, that back in April of 1988, in declining to bifurcate this same trial along the validity and infringement lines, I specifically noted that a piecemeal trial on separate issues involved in one suit is not necessarily in the interest of swift, economical and nonprejudicial justice. *See* Wright and A. Miller, *Federal Practice and Procedure*, Section 2388 at 279, 283; *H.B. Fuller*

*Co. v. National Starch & Chemical Corp.*, 595 F.Supp. 622, 625 (D.Del.1984).

Whenever a separation would involve similar witnesses and evidence, the proceedings would be duplicative and any time savings would be speculative. *See Reliable Volkswagen Sales & Services C. v. Worldwide Auto Corp.*, 34 F.R.D. 134, 138 (D.N.J.1963).

The parties seeking bifurcation has the burden of showing that bifurcation is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties. *See McRae v. Pittsburgh Corning Corp.*, 97 F.R.D. 490, 492 (E.D.Pa.1983).

While my findings concerning infringement and invalidity are distinct from the considerations involved in damages and liability, the reasoning applies with equal force.

The plaintiff has argued that the Lewellen invention was nonobvious and in support of this position the plaintiff will introduce secondary considerations such as the commercial success of the Beecham product and the contacts between Beecham, Lewellen, as well as Lewellen and other companies. The plaintiff persuasively argues that these are the same factors relevant to damages. Such secondary considerations are clearly relevant and probative. *See Graham v. John Deere*, 383 U.S. 1, 17-18 (1966).

I have lived with this case. I'm not in any way denigrating or deprecating the fact that Judge Chesler has also. He is, as I have often remarked, an extremely able Magistrate. But I find that he has that his finding in this regard is clearly erroneous, that he made a mistake here. I do myself, on many occassions and I have appellate courts reminding me of that fact.

I find there will be considerable overlap between the witnesses and the nature of the information sought and that the defendants' argument that reasonable royalty damages are inherently complex are unpersuasive.

*9 Furthermore, the plaintiff's concern over the advanced age of a number of the relevant witnesses, I believe, supports the plaintiff's position that prudence dictates proceeding with these witnesses now, without waiting until a liability trial has been completed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 7
Not Reported in F.Supp., 1991 WL 16494 (D.N.J.), 17 U.S.P.Q.2d 1149
(Cite as: Not Reported in F.Supp.)

While not specifically considered by the Magistrate, the plaintiff's agreement to defer deposition and other discovery of defendant's trial counsel should circumvent any potential problems concerning the disqualification of trial counsel.

I'm not going to pass on the Seventh Amendment problem, Mr. Creel. I don't think I have to.

Because I find that the defendant has persuasively argued that there would be a sufficient, and more importantly, significant savings in time and expense, and I say at the risk of being considered immodest or sounding immodest, and hopefully logical, that the logic which I employed in declining to bifurcate infringement and invalidity applies, as I said a little while ago, with equal force, after examining all the issues here.

Therefore, I decided to overrule the Magistrate's opinion in which he bifurcated the trial with respect to damages, liability and stay discovery. It should have been-it should not have been the ruling and I reverse it for the reasons stated.

I will ask you, Mr. Creel, if you will-I better ask Mr. Lite, since he's local counsel.

Mr. Lite, will you be kind enough to draw an appropriate order reflecting my findings?

MR. LITE: I certainly will, your Honor. I want to move on with this trial.

D.N.J.,1991.
Mellon v. Beecham Group PLC
Not Reported in F.Supp., 1991 WL 16494 (D.N.J.), 17 U.S.P.Q.2d 1149

Briefs and Other Related Documents (Back to top)

• 2:86CV02179 (Docket) (Jun. 04, 1986)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.