# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVENTIS PHARMACEUTICALS INC. and SANOFI-AVENTIS US LLC, | ) ) ) ) | **REDACTED – PUBLIC VERSION** |
| Plaintiffs, | ) ) | C.A. No. 06-286 (GMS) |
| v. | ) ) ) | |
| BARR LABORATORIES, INC. | ) ) | |
| Defendant. | ) ) | |


**BARR LABORATORIES INC.'S *MOTION IN LIMINE* TO EXCLUDE AVENTIS' ASSERTIONS OF ANY INVENTION DATES LATER THAN MAY 1, 1992**


Dated: April 28, 2008

Josy W. Ingersoll (#1088)
Karen L. Pascale (#2903)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Tel: (302) 571-6672
Fax: (302) 571-1253

James F. Hurst
Taras A. Gracey
Maureen L. Rurka
Julia M. Johnson
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601

*Attorneys for Defendant Barr Laboratories, Inc.*

**INTRODUCTION**

On April 21, 2008 – eight months after fact discovery closed, one month after expert discovery closed and just weeks before trial – Aventis served a "supplemental" interrogatory response, changing its asserted dates of "reduction to practice" by *two years*, from May 1, 1992 to April 1, 1994.  (Ex. 1 at 32; Ex. 2 at 15-16.)  Aventis first disclosed a 1992 reduction-to-practice date near the outset of discovery in December 2006.  (Ex. 3 at 8.)  Throughout the entire case, Barr relied on that 1992 date to develop its case, including when taking depositions, investigating the prior art, and preparing expert reports.  Permitting Aventis now to change its claimed date would prejudice Barr severely, require the reopening of both fact and expert discovery, and delay trial for many months.  Aventis has no valid excuse for forcing such a massive disruption in this Court's trial schedule, which has been in place for nearly two years.  Accordingly, the Court should preclude Aventis from belatedly asserting a reduction to practice date anytime after May 1, 1992.

**ARGUMENT**

I.     **Legal Standards.**

Courts weigh several factors when determining whether to preclude untimely contentions under Federal Rule of Civil Procedure 37(c)(1), including: (1) the prejudice to the movant; (2) the ability to cure that prejudice; (3) the potential disruption of the trial schedule; (4) the willfulness of the non-movant; and (5) the importance of the evidence.  *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977).  Courts are particularly prone to "exclude evidence without a strict showing that each of [these] factors has been satisfied" when the litigation is complex and among sophisticated parties represented by competent counsel, particular when the aggrieved party is prejudiced by the belated disclosure and the disclosing party lacks a reasonable excuse for the delay.  *Bridgestone Sports Co. Ltd. v.*

*Acushnet Co.*, C.A. No. 05-132-JJF, 2007 WL 521894, at *4-5 (D. Del. Feb. 15, 2007)

(excluding belatedly disclosed prior art references based on prejudice and lack of excuse);

*AstraZeneca AB v. Mut. Pharm. Co.*, 278 F. Supp. 2d 491, 507-09 (E.D. Pa. 2003) (same);

*Philips Elecs. N. Am. Corp. v. Contec Corp.*, C.A. No 02-123-KAJ, 2004 WL 769371, at *1 (D.

Del. Apr. 5, 2004) (same for belatedly disclosed documents); *Tweed v. Metro Motors S.C.*, No.

2004 CV-0142, 2007 WL 496427, at *1 (D.V.I. July 17, 2007) (same for belatedly disclosed

expert opinion); *see also Chimie v. PPG Indus.*, 402 F.3d 1371, 1381 (Fed. Cir. 2005) (affirming

exclusion of belatedly disclosed evidence).

## II.    Aventis' Eve-Of-Trial Shift In Position Would Prejudice Barr Severely.

Aventis' brand new reduction-to-practice date should be excluded.  As the Court knows,

an asserted reduction-to-practice date drives the analysis on many patent issues.

First, the reduction-to-practice date affects the date of invention, which provides the cut-

off for what qualifies as prior art.  35 U.S.C. § 102.  Here, Aventis has claimed a date of

invention of January 1989, which – until a week ago – had been based on the assertion that the

claimed invention's conception occurred in January 1989, followed by "diligence" in reducing

the claimed invention to practice in early 1992.  (Ex. 3 at 7.)  If it were permitted to shift its

reduction-to-practice date by two years to April 1994 – creating over a five-year gap after

conception – Aventis would put its date of invention up for grabs, requiring entirely new factual

and expert analysis.  *See* 3 Chisum on Patents § 10.07[1] at 10-255 (2002) (even short "lapse[] in

activity" can refute claimed "reasonable diligence" in reducing to practice, thus delaying asserted

invention date).

Second, the reduction-to-practice date determines whether a patentee can rely on the

"experimental use" exception to attempt to avoid a prior public use defense under § 102(b).  The

patentee has the burden of proving that exception, which requires "convincing evidence" that the

prior public use was experimental in nature. *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1316 (Fed. Cir. 2005). Under black-letter law, however, the experimental use exception does *not* apply if the public use occurred *after* reduction to practice. *New Railhead Mfg. LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002).

Here, as explained in its March 2006 notice letter, Barr's prior public use defense is based on clinical trials occurring in late 1992 and 1993. (Ex. 4 at A7, A16-17; D.I. 161, Barr's FOF/COL at ¶ 35.) In an interrogatory response served in December 2006, Aventis asserted a reduction-to-practice date of early 1992 – *before* those clinical trials, meaning that Aventis was *not* relying on the experimental use exception. Barr relied on Aventis' asserted 1992 reduction-to-practice date when developing its case. In fact, it did not even investigate Aventis' reduction-to-practice date in any meaningful way. Allowing Aventis now to move that date by *two years* would require Barr to take extensive additional discovery, including: (1) redeposing the inventor and Aventis' fact witnesses on the clinical trials; (2) redeposing Aventis' expert on experimental use; (3) developing its own expert testimony on experimental use and reduction to practice; (4) examining, through fact and expert testimony, Aventis' diligence in reducing the claimed invention to practice; and (5) determining whether additional invalidating prior art exists.

Not only would this additional discovery disrupt the Court's trial schedule, but it would delay the case's resolution until well after Barr receives final FDA approval, which is currently scheduled for September 2008 at the conclusion of the 30-month stay. This would be entirely unfair to Barr because it would force Barr to decide whether to launch at risk long before a decision on the merits. *See Bridgestone*, 2007 WL 521894, at *5 (excluding belatedly disclosed evidence because additional discovery would delay trial); *Chimie*, 402 F.3d at 1381 (same); *AstraZeneca*, 278 F. Supp. 2d at 507 (precluding belatedly-disclosed prior art because "[f]act witnesses may now give more 'result-oriented' testimony").

III.    **Aventis Cannot Justify Its Eleventh-Hour Change Of Position.**

Aventis has attempted to justify its last-minute change by asserting that it is merely attempting to fix a "mistake" through a "supplemental" interrogatory response under Rule 26(e). (Ex. 2 at 2.)  But "[t]here is a need for some type of diligence in discovery supplementation, otherwise Rule 26(e) has no meaning." *SPX Corp. v. Bartec USA,* LLC, No. 06-14888, 2008 WL 1701641, at *8 (E.D. Mich. Apr. 10, 2008).  Indeed, "supplementation" under that rule means "correcting inaccuracies . . . *based upon information that was not available* at the time of the initial disclosure." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, No. 05-2115, 2007 WL 1589495, at *9 (D.D.C. June 1, 2007) (quotations and citation omitted).

Here, Aventis is not even claiming it discovered new *factual* information.  Rather, it is claiming it made a "mistake" about the *law* on reduction to practice – a claim it bases on the district court's opinion in *In re Omeprazole Patent Litig.*, 490 F. Supp. 2d 381 (S.D.N.Y 2007).  But that case issued nearly a year ago on May 31, 2007, months before fact discovery closed in this case.  And the court did not even purport to *change* the law, but only to apply *existing* law from the Federal Circuit, based on the unique facts of that case as applied to the specific claims of the disputed patent.  *Id.* at 506.

Aventis also tries to blame *Barr* for its "mistake" by claiming Barr asserted a "new legal theory" in its recently-filed findings of fact and conclusions of law.  (Ex. 2 at 2-3.)  But Barr raised nothing "new" and, instead, cited Federal Circuit cases from as early as *1989* holding that the experimental use exception does not apply after reduction to practice.  (*See* D.I. 161, Barr's FOF/COL at ¶ 370.)  Aventis cannot blame Barr if it was not aware of that settled law.

Aventis also argues that Barr should have told Aventis about the controlling law in interrogatory responses.  But Aventis' interrogatory asked Barr to disclose "all facts and evidence" supporting its defenses, not the *law* concerning those defenses.  (Ex. 5 at 4.)

**Redacted – Public Version**

Moreover, reduction to practice is irrelevant to Barr's case-in-chief on public use, which was the only thing Aventis asked Barr to describe. Aventis – not Barr – has the burden of asserting and proving the experimental use exception, which it did not even assert until January 31, 2008 when it served an expert report on the issue after the close of fact discovery. (D.I. 164, Aventis' FOF/COL at ¶ 346.) *See also Lisle*, 398 F.3d at 1316. In any event, while it had no burden to do so, Barr actually *did* identify Aventis' reduction to practice date as part of the "facts and evidence" supporting its public use defense. (Ex. 5 at 14 (identifying responses to Barr's Interrogatory No. 7 which sought reduction to practice contentions).)

Under these circumstances, Aventis' belated change in its reduction-to-practice date cannot be excused by a complaint that Barr failed to inform Aventis about settled legal principles. Thus, Aventis has failed to offer a single valid reason that it could not have provided this April 1994 reduction to practice contention in a timely and nonprejudicial fashion to allow Barr an opportunity to develop its case.

## <u>CONCLUSION</u>

For the foregoing reasons, Barr respectfully requests that this Court preclude Aventis from asserting any reduction to practice date after May 1, 1992.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

April 28, 2008

Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600
-and-

**WINSTON & STRAWN LLP**
James F. Hurst
Taras A. Gracey
Maureen L. Rurka
Julia M. Johnson
35 West Wacker Drive
Chicago, Illinois 60601
Telephone:  (312) 558-5600

*Attorneys for Defendant, Barr Laboratories, Inc.*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on May 7, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
> John G. Day, Esquire [jday@ashby-geddes.com]
> Tiffany Geyer Lydon, Esquire [tlydon@ashby-geddes.com]
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on May 7, 2008, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following non-registered participants in the manner indicated:

> ### *By E-Mail*
>
> Paul H. Berghoff, Esquire [berghoff@mbhb.com]
> Joshua R. Rich, Esquire [rich@mbhb.com]
> Jeremy E. Noe , Esquire [noe@mbhb.com]
> MCDONNELL BOEHNEN HULBERT
>    & BERGHOFF LLP
> 300 South Wacker Drive
> Chicago, Illinois 60606

> **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
>
> */s/ Karen L. Pascale*
> _____
> Josy W. Ingersoll (#1088)
> Karen L. Pascale (#2903)
> Karen E. Keller (#4489)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19801
> (302) 571-6600
> Email:  kpascale@ycst.com
>    *Attorneys for Defendant, Barr Laboratories, Inc.*

# EXHIBITS 1-3

## REDACTED IN THEIR ENTIRETY

# EXHIBIT 4



**Sterne Kessler**
**Goldstein Fox**
ATTORNEYS AT LAW

Robert Greene Sterne
Jorge A. Goldstein
David K.S. Cornwell
Robert W. Esmond
Tracy-Gene G. Durkin
Michele A. Cimbala
Michael B. Ray
Robert E. Sokohl
Eric K. Steffe
Michael Q. Lee
Steven R. Ludwig
John M. Covert
Linda E. Horner
Robert C. Millonig
Donald J. Featherstone
Timothy J. Shea, Jr
Michael V. Messinger
Judith U. Kim

Patrick E. Garrett
Jeffrey T. Helvey
Heidi L. Kraus
Eldora L. Ellison
Thomas C. Fiala
Donald R. Banowit
Peter A. Jackman
Jeffrey S. Weaver
Brian J. Del Buono
Vincent L. Capuano
Virgil Lee Beaston
Theodore A. Wood
Elizabeth J. Haanes
Joseph S. Ostroff
Frank R. Cottingham
Rae Lynn P. Guest
Daniel A. Klein
Jason D. Eisenberg

Michael D. Specht
Tracy L. Muller
Jon E. Wright
LuAnne M. DeSantis
Ann E. Summerfield
Helene C. Carlson
Cynthia M. Bouchez
Timothy A. Doyle
Gaby L. Longsworth
Lori A. Gordan
Ted J. Ebersole
Laura A. Vogel
Bryan S. Wade
Bashir M.S. Ali
Shannon A. Canoll
Matthew E. Kelley
Michelle K. Holoubek*
Marsha A. Rose*

W. Blake Coblentz*
James J. Pohl*
John T. Haran*
Mark W. Rygiel

Registered Patent Agents*
Karen R. Markowicz
Matthew J. Dowd
Katrina Najlan Pel Quach
Bryan L. Skelton
Robert A. Schwartzman
Teresa A. Colella
Victoria S. Rutherford
Simon J. Elliott
Julie A. Helder
Mita Mukherjee
Scott M. Woodhouse
Christopher J. Walsh

Liliana Di Nola-Baron
Peter A. Socarras
Jeffrey Mills
Danielle L. Letting
Lori Brandes

Of Counsel
Edward J. Kessler
Kenneth C. Bass III
Marvin C. Guthrie

*Admitted only in Maryland
*Admitted only in Virginia
*Practice Limited to
 Federal Agencies

March 20, 2006

*WRITER'S DIRECT NUMBER:*
(202) 772-8508
*INTERNET ADDRESS:*
EELLISON@SKGF.COM

Chief Executive Officer                    *REGISTERED MAIL- RETURN RECEIPT*
**SANOFI-AVENTIS INC.**
300-400 Somerset Corporate Boulevard
Bridgewater, NJ 08807-2854

Chief Executive Officer                    *REGISTERED MAIL- RETURN RECEIPT*
**RORER PHARMACEUTICAL PRODUCTS INC.**
c/o SANOFI-AVENTIS INC.
300-400 Somerset Corporate Boulevard
Bridgewater, NJ 08870-2854

Chief Executive Officer                    *REGISTERED MAIL- RETURN RECEIPT*
**AVENTIS PHARMACEUTICALS HOLDINGS INC.**
c/o SANOFI-AVENTIS INC.
300-400 Somerset Corporate Boulevard
Bridgewater, NJ 08870-2854

Re:    **Notification Pursuant to § 505(j)(2)(B)(ii) of the Federal Food,
       Drug and Cosmetic Act
       (21 U.S.C. § 355(j)(2)(B)(ii) and 21 C.F.R. § 314.95)**

Dear Sir or Madam:

We represent BARR LABORATORIES, INC. ("BARR") of Pomona, New York. We are
writing on behalf of our client to provide notice of the following information to SANOFI-
AVENTIS, INC. ("AVENTIS"), the owner of U.S. Patent Nos. 5,976,573 and 6,143,329, according to
documents filed with the U.S. Patent & Trademark Office.

**I.**

Pursuant to 21 U.S.C. §355(j)(2)(B)(ii) and 21 C.F.R. §314.95(c)(1), we advise you that
the FDA has received an Abbreviated New Drug Application ("ANDA") from BARR containing
bioavailability and/or bio-equivalence data from studies on the triamcinolone acetonide drug

Chief Executive Officer
**SANOFI-AVENTIS INC.**
March 20, 2006
Page 2

product that is the subject of NDA No. 78-104. The ANDA was submitted under 21 U.S.C. §355(j)(1) and (2)(A) with a paragraph IV certification to obtain approval to engage in the commercial manufacture, use or sale of a triamcinolone acetonide drug product before the expiration of U.S. Patent Nos. 5,976,573 and 6,143,329, which are listed in *Approved Drug Products with Therapeutic Equivalence Evaluation* ("Orange Book").

## II.

Pursuant to 21 C.F.R. §314.95(c)(2), we advise you that the ANDA submitted by BARR has been assigned the number 78-104 by the FDA.

## III.

Pursuant to 21 C.F.R. §314.95(c)(3), we advise you that the established name of the drug product that is the subject of BARR's ANDA is triamcinolone acetonide aqueous nasal spray, 0.055 µg/spray.

## IV.

Pursuant to 21 C.F.R. §314.95(c)(4), we advise you that the proposed drug product is in the form of an aqueous nasal spray that will include 0.055 µg/spray of the active triamcinolone acetonide.

## V.

Pursuant to 21 C.F.R. § 314.95(c)(5), we advise you that the patents alleged to be not infringed, invalid and/or unenforceable in the paragraph IV certification are U.S. Patent Nos. 5,976,573 and 6,143,329. According to the Orange Book, U.S. Patent Nos. 5,976,573 and 6,143,329 will expire on July 3, 2016.

## VI.

BARR alleges, and has certified to the FDA, that in BARR's opinion, and to the best of its knowledge, U.S. Patent Nos. 5,976,573 and 6,143,329 are invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use and/or sale of the drug product described in BARR's ANDA. Therefore, pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) and 21 C.F.R. §314.95(c)(6) -- and without prejudice to any additional defenses that BARR may raise in any litigation -- BARR's detailed statement of the legal and factual basis for the certification set forth in BARR's ANDA is attached hereto as an appendix and is made part hereof.

Chief Executive Officer
SANOFI-AVENTIS INC.
March 20, 2006
Page 3

## VII.

Pursuant to 21 U.S.C. § 355(j)(5)(C), this notice letter includes an Offer of Confidential Access to Application. As required by § 355(j)(5)(C)(i), BARR offers to provide confidential access to certain information from its ANDA No. 78-104 for the sole and exclusive purpose of determining whether an infringement action referred to in § 355(j)(5)(B)(iii) can be brought.

Section 355(j)(5)(C)(i)(III) allows BARR to impose restrictions "as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information." That provision also grants BARR the right to redact its ANDA in response to a request for Confidential Access under this offer.

As permitted by statute, BARR imposes the following terms and restrictions on its Offer of Confidential Access:

(1)     BARR will permit confidential access to certain information from its proprietary ANDA No. 78-104 to attorneys from one outside law firm representing AVENTIS provided, however, that attorneys from such firm do not engage, formally or informally, in patent prosecution for AVENTIS. Such information (hereinafter, "Confidential BARR Information") shall be marked with the legend "CONFIDENTIAL".

(2)     The attorneys from the outside law firm(s) representing AVENTIS shall not disclose any Confidential BARR Information to any other person or entity, including AVENTIS employees, outside scientific consultants, and/or other outside counsel retained by AVENTIS, without the prior written consent of BARR's outside counsel STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

(3)     As provided by § 355(j)(5)(C)(i)(III) AVENIS' outside law firm(s) shall make use of the Confidential BARR Information for the sole and exclusive purpose of determining whether an action referred to in § 355(j)(5)(B)(iii) can be brought and for no other purpose. By way of example only, the Confidential BARR Information shall not be used to prepare or prosecute any future or pending patent application by AVENTIS, or in connection with any filing to or communication with the FDA relating to BARR's ANDA No. 78-104. AVENTIS' outside law firm agrees to take all measures necessary to prevent unauthorized disclosure or use of the Confidential BARR Information, and that all Confidential BARR Information shall be kept confidential and not disclosed in any manner inconsistent with this Offer of Confidential Access.

(4)     The Confidential BARR Information disclosed is, and remains, the property of BARR. By providing the Confidential BARR Information, BARR does not grant AVENTIS

Chief Executive Officer
SANOFI-AVENTIS INC.
March 20, 2006
Page 4

and/or AVENTIS' law firm(s) any interest in or license to the Confidential BARR
Information.

(5)     AVENTIS' law firm(s) shall, within thirty-five (35) days from the date that it first
receives the Confidential BARR Information, return to BARR's outside counsel STERNE,
KESSLER, GOLDSTEIN, & FOX, P.L.L.C., all Confidential BARR Information and any copies
thereof.  AVENTIS' law firm(s) shall return to STERNE, KESSLER, GOLDSTEIN, & FOX,
P.L.L.C. all Confidential BARR Information before any infringement suit is filed by
AVENTIS, if suit is commenced before this 35-day period expires.  In the event that
AVENTIS opts to file suit, none of the information contained in or obtained from any
Confidential BARR Information that BARR provides will be included in any publicly-
available complaint or other pleading.

(6)     Nothing in this Offer of Confidential Access shall be construed as an admission
by BARR regarding the validity, enforceability, and/or infringement of any U.S. Patent.
Further, nothing herein shall be construed as an agreement or admission by BARR with
respect to the competency, relevance, or materiality of any such Confidential BARR
Information, document, or thing.  The fact that BARR provides Confidential BARR
Information upon request of AVENTIS shall not be construed as an admission by BARR
that such Confidential BARR Information is relevant to the disposition of any issue
relating to any alleged infringement of the '573 or '329 patents, or to the validity or
enforceability of those patents.

(7)     The attorneys from AVENTIS' outside law firm(s) will acknowledge in writing
their receipt of a copy of these terms and restrictions prior to production of any
Confidential BARR Information.  Such written acknowledgement shall be provided to
BARR's outside counsel STERNE, KESSLER, GOLDSTEIN, & FOX, P.L.L.C.

(8)     This Offer of Confidential Access shall be governed by the laws of the State of
New York.

Chief Executive Officer
SANOFI-AVENTIS INC.
March 20, 2006
Page 5


Section 355(j)(5)(C)(i)(III) provides that any request for access that AVENTIS makes under this Offer of Confidential Access "shall be considered acceptance of the offer of confidential access with the restrictions as to persons entitled to access, and on the use and disposition of any information accessed, contained in [this] offer of confidential access" and that the "restrictions and other terms of [this] offer of confidential access shall be considered terms of an enforceable contract." Thus, to the extent that AVENTIS requests access to Confidential BARR Information, it necessarily accepts the terms and restrictions outlined above. Written notice requesting access under this Offer of Confidential Access should be made to:

> Robert C. Millonig
> STERNE, KESSLER, GOLDSTEIN, & FOX P.L.L.C.
> 1100 New York Avenue, N.W.
> Washington, D.C. 20005
> Tel: (202) 772-8653
> Fax: (202) 371-2540

By providing this Offer of Confidential Access to Application, BARR maintains the right and ability to bring a Declaratory Judgment action under 28 U.S.C. §§ 2201 *et seq.*, pursuant to 21 U.S.C. § 355(j)(5)(C).



Very truly yours,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Eldora L. Ellison

Laura A. Vogel

ELE:LAV

Enclosures

- A1 -

**APPENDIX**

*Detailed Factual and Legal Basis for BARR's Paragraph IV Certification*

## I.    Introduction

This document is the detailed factual and legal basis for the assertion of BARR LABORATORIES, INC. ("BARR") that, in its opinion and to the best of its knowledge, U.S. Patent Nos. 5,976,573 ("the '573 patent") and 6,143,329 ("the '329 patent") are invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use, sale and/or offer for sale of the drug product described in BARR's ANDA. The right to raise additional defenses is specifically reserved.

## II.    Background Information

### A.  *Nasacort AQ®*

According to the records of the U.S. Food and Drug Administration, the active ingredient in the drug product Nasacort AQ® is triamcinolone acetonide (triamcinolone). Nasacort AQ® is approved for the treatment of nasal symptoms of seasonal and perennial rhinitis. It is supplied as an unscented, thixotropic, water-based metered-dose pump spray formulation unit containing a microcrystalline suspension of triamcinolone acetonide in an aqueous medium, with various inactive ingredients. Each actuation of the pump delivers 55 µg of triamcinolone acetonide from the nasal actuator to the patient after an initial priming of 5 sprays.

### B.  *The ANDA Formulation*

The product that is the subject of BARR's ANDA ("BARR's ANDA product") is a pump spray formulation unit containing triamcinolone acetonide. BARR's ANDA product is substantially different from the subject matter claimed in one or more claims of the '573 and '329 patents.

### C.  *The Scope and Content of the Prior Art*

#### 1.    The Settipane Paper

A paper by Settipane *et al.*, entitled, "Triamcinolone Acetonide Aqueous Nasal Spray in Patients with Seasonal Ragweed Allergic Rhinitis: A Placebo-Controlled, Double-Blind Study," *Clinical Therapeutics*, vol. 17, no. 2 (1995) ("the Settipane paper"), was published before July of 1995. The Settipane paper qualifies as prior art to the claims of the '573 and '329 patents under 35 U.S.C. § 102(b), since it was published more than one year prior to the earliest priority date of the '573 and '329 patents (*i.e.* July 3, 1996).

- A2 -

The Settipane paper describes, *inter alia*, the administration of a thixotropic aqueous nasal spray formulation of triamcinolone acetonide for the treatment of seasonal allergic rhinitis. The formulation described in the Settipane paper was administered using a precompression nasal spray pump. The Settipane paper describes use of the triamcinolone nasal spray that is the subject of the '573 and '329 patents.

### 2.    The Kobayashi Paper

A paper by Kobayashi *et al.*, entitled, "Triamcinolone acetonide aqueous nasal spray for the treatment of patients with perennial allergic rhinitis: a multicenter, randomized, double-blind, placebo-controlled study" ("the Kobayashi paper")   *Clin. Therap.* 17:503-13 (1995), was published before July of 1995. The Kobayashi paper qualifies as prior art to the claims of the '573 and '329 patents under 35 U.S.C. § 102(b), since it was published more than one year prior to the earliest priority date of the '573 and '329 patents (*i.e.* July 3, 1996).

The Kobayashi paper describes, *inter alia*, the administration of a thixotropic aqueous nasal spray formulation of triamcinolone acetonide for the treatment of perennial allergic rhinitis. The Kobayashi paper describes the use of the triamcinolone nasal spray that is the subject of the '573 and '329 patents.

### 3.    The Prior Public Use of the Claimed Composition

The clinical trials described in the Settipane and Kobayashi articles involved the use of thixotropic aqueous triamcinolone nasal spray formulation recited in the claims of the '573 and '329 patents.    The public use of the invention occurred in the U.S. after the claimed compositions, articles of manufacture and methods of the claims of the '573 and '329 patents were reduced to practice, but more than one year before the U.S. priority date of the '573 and '329 patents, and is therefore a prior public use under 35 U.S.C. § 102(b). The prior public use of the recited compositions, articles of manufacture and methods in at least one of the clinical trials was not an experimental use.

### 4.    U.S. Patent No. 4,767,612

U.S. Patent No. 4,767,612 ("the '612 patent"), entitled "Triamcinolone acetonide for the treatment of allergic rhinitis," issued to Nicholas Hagen and Kim Lamon on August 30, 1988. This patent qualifies as prior art to the '573 and '329 patents under 35 U.S.C. §§ 102(b) and 102(e), because it was published/issued more than one year prior to the priority date of the '573 and '329 patents.

The '612 patent describes, *inter alia*, methods and compositions for treating allergic rhinitis using an aerosol formulation of micronized triamcinolone acetonide with a particle size of 1-5 µm for nasal administration. The '612 patent also states that during clinical trials, the formulation was administered to humans as a single spray in each nostril from an aerosol dispenser. Dosages of 100 to 1600 µg per day (preferably 200 to 800 µg daily) accomplished the

- A7 -

conchas and such that portions of said amounts are retained on
each of said mucosal surfaces for at least an hour.

### B. Claims 1-14 and 21-35 of the '573 Patent are Invalid Under 35 U.S.C. § 102(b)

For at least the reasons discussed below, claims 1-14 and 21-35 of the '573 patent are
invalid under 35 U.S.C. §102(b), because an embodiment of each of these claims was in public
use more than one year prior to the priority date of the application that issued as the '573 patent.

A composition encompassed by the claims of the '573 patent was used in clinical trials
that took place in the United States prior to 1995. Those clinical trials were described in the
Settipane and Kobayashi papers. Claims 1-14 and 21-35 encompass this composition, as well as
the precompression pump and methods used during administration of the composition during its
prior public use. The public use of the invention occurred in the U.S. after the claimed invention
of each of claims 1-14 and 21-35 of the '573 patent was reduced to practice, but more than one
year before the U.S. priority date of the '573 patent. The prior public use of the recited
composition, articles of manufacture and methods in at least one of the clinical trials was not an
experimental use. Therefore, patients used the claimed composition, article of manufacture and
methods of claims 1-14 and 21-35 in the United States more than one year before the application
that issued as the '573 patent was filed. Hence, claims 1-14 and 21-35 of the '573 patent are
invalid under 35 U.S.C. § 102(b).

### C. Claims 1-14 and 21-35 of the '573 Patent are Invalid Under 35 U.S.C. § 103(a)

Claims 1-14 and 21-35 of the '573 patent also would have been obvious under 35 U.S.C.
§ 103(a) in view of the prior public use of the claimed thixotropic aqueous triamcinolone
acetonide composition, the 1995 *Physician's Desk Reference*, the Settipane paper, the Kobayashi
paper, International Publication Nos. WO92/04365, WO94/05330 and/or WO92/14473, and/or
U.S. Patent No. 4,767,612. The listed references all published or issued as patents at least one
year prior to the '573 patent's July 3, 1996 priority date and therefore qualify as prior art under 35
U.S.C. § 102(b).

The prior public use of the recited composition, in combination with these patents and
publications, disclose a thixotropic aqueous glucocorticosteroid nasal spray formulation for
treatment of allergic rhinitis. They also disclose effective dosages of solid particles of
triamcinolone acetonide when applied using an aerosol nasal spray, precompression pumps.
Thus, the prior public use of the recited compositions, articles of manufacture and methods, in
combination with these patents and publications, disclose all of the elements of claims 1-14 and
21-35 of the '573 patent. A person of ordinary skill in the art would have been motivated to
combine the teachings of the prior public use and prior art to arrive at the compositions, articles
of manufacture and methods recited in claims 1-14 and 21-35 of the '573 patent, and would have
had a reasonable expectation of success.

- A16 -

which is propellant-free and has a pH of about 4.5 to 7.5, and which comprises (a) triamcinolone acetonide; (b) a mixture of microcrystalline cellulose and carboxymethylcellulose sodium; (c) Polysorbate 80; (d) disodium ethylenediamine tetraacetate; (e) benzalkonium chloride; (f) dextrose; and (g) purified water;

(B) a vessel which contains said composition; and

(C) a precompression pump associated with the vessel and which is capable of spraying a full dose of the composition into the nostril of an individual.

14. A method for treating allergic rhinitis in an individual comprising the administration to said individual of an aqueous thixotropic pharmaceutical composition comprising:

(A) a pharmaceutically effective amount of solid particles of triamcinolone acetonide which is effective in treating allergic rhinitis by virtue of its being present on the mucosal surfaces of the nasal cavity of the individual; and

(B) a suspending agent in an amount effective to maintain said particles dispersed uniformly in the composition and to impart to the composition thixotropic properties; by spraying a full dose of the composition in the form of a readily flowable atomized mist into one of the nostrils of the individual for deposit on the mucosal surfaces of the nasal cavity in the form of a viscous composition which resists being cleared from the mucosal surfaces by the inherent mucocillary forces which are present in the nasal cavity.

25. A method for delivering an aqueous thixotropic pharmaceutical composition comprising triamcinolone acetonide to each of the mucosal surfaces of the anterior regions of the nose, the frontal sinus and the maxillary sinuses and on each of the mucosal surfaces which overlie the turbinates covering the conchas comprising spraying a full dose of the composition in the form of a readily flowable atomized mist into each nostril of the individual and allowing said sprayed composition to deposit on said surfaces in the form of a viscous composition which resists being cleared from the mucosal surfaces by the inherent mucocillary forces which are present in the nasal cavity.

### B. Claims 1-20 and 22-29 of the '329 Patent are Invalid Under 35 U.S.C. § 102(b)

For at least the reasons discussed below, claims 1-20 and 22-29 of the '329 patent are invalid under 35 U.S.C. § 102(b) because an embodiment of each of these claims was in public use more than one year prior to the priority date of the application that issued as the '329 patent.

- A17 -

The clinical trials described in the Settipane and Kobayashi papers involved the use a thixotropic aqueous triamcinolone nasal spray formulation as recited in claims 1-20 and 22-29 of the '329 patent. Claims 1-20 and 22-29 encompass this composition, as well as the precompression nasal spray pump and methods used during administration of the composition. The public use of the invention occurred in the U.S. after the recited compositions, articles of manufacture and methods of each of claims 1-20 and 22-29 of the '329 patent were reduced to practice, but more than one year before the U.S. priority date of the '329 patent. The prior public use of the claimed composition and method in at least one of the clinical trials was not an experimental use. Therefore, patients used the claimed composition, article of manufacture and methods of claims 1-20 and 22-29 in the United States more than one year before the application that issued as the '329 patent was filed. Hence, claims 1-20 and 22-29 of the '329 patent are invalid under 35 U.S.C. § 102(b).

### C.    Claims 1-29 of the '329 Patent are Invalid Under 35 U.S.C. § 103(a)

Claims 1-29 of the '329 patent also would have been obvious under 35 U.S.C. § 103(a) in view of the prior public use of the claimed composition, the '95 PDR, the Settipane paper, the Kobayashi paper, International Publication Nos. WO92/04365, WO94/05330 and/or WO92/14473, and/or U.S. Patent No. 4,767,612. The listed references all published or issued as patents at least one year prior to the '329 patent's July 3, 1996 priority date and therefore qualify as prior art under 35 U.S.C. § 102(b).

The prior public use of the recited composition, in combination with these patents and publications, disclose a thixotropic aqueous glucocorticosteroid nasal spray formulation and methods for treatment of allergic rhinitis, as well as an article of manufacture as recited in claims 1-29 of the '329 patent. The prior art also discloses effective dosages of solid particles of triamcinolone acetonide when applied using an aerosol nasal spray or aqueous nasal spray formulations administered with a precompression pump. Thus, the prior public use of the recited compositions, articles of manufacture and methods, in combination with these patents and publications, disclose all of the elements of claims 1-29 of the '329 patent. A person of ordinary skill in the art would have been motivated to combine the teachings of the prior public use and prior art to arrive at the compositions, articles of manufacture and methods recited in claims 1-29 of the '329 patent, and would have had a reasonable expectation of success in doing so.

### 1.    Claims 1-5

#### a.    Claims 1-5 are invalid as obvious over the 1995 Physician's Desk Reference in view of WO92/14473, and further in view of the 1994 Handbook of Pharmaceutical Excipients

The thixotropic aqueous pharmaceutical composition comprising solid particles of triamcinolone acetonide and a suspending agent recited in claims 1-5 of the '329 patent would have been obvious on the priority date of the '329 patent, in light of the '95 PDR in view of the '473 application, and further in view of the '94 Handbook of Pharmaceutical Excipients.

# EXHIBIT 5

## REDACTED IN ITS ENTIRETY